## No. 656.

STATE EX REL. FRANK VAUGHAN, DISTRICT ATTORNEY PRO TEMPORE, VS.
W. L. RICHMOND, SHERIFF.

The law which empowers judges to suspend sheriffs from office, on account of the latters' neglect, or refusal to perform their duties, is constitutional.
The office of district attorney *pro tempore* has not been abolished.

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Ray, J.* .

*Frank Vaughan*, District Attorney *pro tem.*, for relator and appellee.
*Morrison & Farmer* and *Newton & Hall*, for respondent.

The opinion of the court was delivered by

DEBLANC, J. On the thirteenth of June 1876, the defendant was, by a decree rendered by the judge of the fourteenth district, suspended from the discharge of his duties as the sheriff of the parish of Morehouse. That decree is based on a written statement filed by the district attorney *pro tempore*, that said sheriff has willfully failed and neglected to execute writs and orders to him directed, and to make return of the same to the courts by which they were issued.

From that decree, defendant has appealed, and, as he did before the district judge, he contends here:

First—That the office of district attorney *pro tempore* has been abolished by the first section of act No. 44, approved on the ninth of March 1874, and that, as it is not sworn to, the statement of Frank Vaughn, as a private citizen, is insufficient.

Second—That, if Vaughan was a district attorney *pro tempore*, he was without authority to act in this proceeding, because the district attorney was in attendance on the lower court, when the aforesaid statement was filed.

Third—That, so far as they relate to the suspension of sheriffs from office, sections 1177, 3592 and 3593 of the Revised Statutes of 1870, are

45

unconstitutional and void, because—1st: the object of the law is not expressed in its title—2d: a sheriff can be removed from office but by the General Assembly.

First—On the twenty-fourth day of February 1876, one Ingram Law killed R. A. Phelps. He was indicted for murder and a true bill found' against him. At the foot of the indictment, there is the following declaration, written by the district attorney. " I refuse to sign this bill, for the reason,of my relationship to the accused, and for other reasons." It was after that refusal that the indictment was signed by Vaughan, as district attorney *pro tempore*.

Defendant's counsel contends that the office of district attorney *pro tempore* was abolished by an act of the Legislature of the ninth May 1874. We believe otherwise. 26 An. p. 548; State ex rel. Thos. Farrar vs. H. A. Garret.

It is true, as a general rule, that district attorneys *pro tem*. can represent the State only where the district attorneys are absent; but they can certainly do so, when, though present, the district attorneys are unable or unwilling to act. In this case, we must and do presume that, as one of the principal causes of the proceedings against the sheriff, was his failure to have arrested Law, the district attorney, for the reason which induced his first refusal, declined to attend to said proceeding and left that task to his substitute. Far from being an irregularity, this course was proper and commendable.

Second—In his able and exhaustive argument, the attorney representing the sheriff, contests the constitutionality of the law empowering the judge to suspend a sheriff. He maintains that this suspension is a removal, and that a sheriff can be legally removed but by the General Assembly.

What is a removal? It is the act of permanently displacing one from an office or post. What is a suspension? It is, exclusively, an interruption in the exercise of the officer's duties, of his authority.

In every land, under every form of government, as a censure or as a penalty, ministers and priests, civil and military officers have been suspended and deprived of their emoluments and privileges. In the armies of the world, though an officer may have paid with his blood the right of wearing his sword, the power to suspend him has never been denied. Why then, if a sheriff has disregarded the duties imposed upon him by his commission, his oath and the law, hesitate to check his flagrant incapacity, and guard society against the danger of his criminal negligence?

The delegation to a judge of the legitimate power to suspend a sheriff, when that sheriff has neglected or refused to perform his duties, is not prohibited by the constitution and not in conflict with any of its clauses.

The exercise of that power is indispensable to the existence of a court, for it would be far better to have no court, than to have one, the mandates of which are ridiculed, despised and resisted. Those mandates should ever be a terror to felons, and, to be a terror, they must be executed.

Third—One question remains to be examined, and that is:

Has defendant, in his capacity of sheriff of the parish of Morehouse, discharged the duties of his office? He has not.

Warrants were placed in his hands for the arrest of four parties indicted for murder. Two of those parties, Kennedy and Law, were fugitives from justice. One of them left the parish of Morehouse, but soon returned there. Two or three demonstrations were organized by the sheriff, for the published purpose of capturing those fugitives, but those demonstrations were too transparent to deceive any one. They were false pretenses, forged letters of credit drawn on the public credulity, and a notice to those who had violated the law, not to be on the highway, at the store, the club-room or the church; and, for these vain displays, these farces, the people are to be taxed.

Mr. Wright, one of the defendant's deputies, testified "that Law had been at his house in Bastrop: he started out three times with Richmond, to assist in arresting Law; the first time they went a mile out of town, the second time two miles and afterward three miles. Richmond wanted to go further, but the *posse* refused. It was raining and the *posse* thought the sheriff was drinking too much. He heard every morning that Law had been in town.

Mr. Rutledge said: Wright, the deputy sheriff, brought me a note, from Law, in which he asked me to come and see him.

Mr. Grant is a resident of Bastrop. Law was at his house, told him to inform Richmond that he had come to stand his trial and not to put himself to any trouble: that he did not want to surrender before the commencement of the jury session.

Richmond said: I do not think that those I summoned as a *posse* kept my movements secret. It seemed to be known all over town when I intended to go.

As to Kennedy, according to the declaration of McGowan, he has been in the parish of Morehouse, and about his father's place since one year or more.

J. A. Ross, the principal deputy of Richmond, declared that, since the latter was sheriff, he had in hand many warrants against parties who were not arrested, and that he never made a return with an affidavit thereto attached.

One of the deputy sheriffs suggested to Judge Bussey that if a sufficient reward was offered, somebody would arrest Law. He inquired,

from the judge, whether the son of Dr. Phelps was going to offer a reward or not.

McDowell was arrested for rape: defendant's deputy testifies that, while he was eating his breakfast, his prisoner got away. It took him by surprise, for in his own language: "previous to the time of escaping, the prisoner had made no effort to escape.

On the second of June 1876, Richmond was indicted and a true bill found against him, for having collected illegal fees; he was arrested and released on bond to appear before the district court.

We pass unnoticed the minor details.

Defendant was charged and stands convicted of a gross, manifest and unjustifiable negligence in the exercise of his duties as sheriff—of a negligence which amounts to a moral complicity with men indicted for murder. As remarked by Mr. Justice Martin, " those who minister in the temple of justice, from the highest to the lowest, should be above suspicion and reproach. None should serve at its altar, whose conduct is at variance with his obligations. Surely he, who can give his aid and sympathy to screen offenders, should not be trusted to take any agency in their prosecution." 2 N. S. p. 703.

The restricted lines of a parish or of a State should not place, beyond the reach of a warrant, those who are charged with murder. Those lines should be crossed, the murderer pursued, tracked and arrested. Until he accounts for the blood he has spilled, he should, in no corner of the world, be allowed to stop and to rest, much less should he be permitted to prowl, heedless and defiant, in the immediate vicinity of the temple of justice and the grave of the victim.

With as careless a sheriff as defendant was, the nefarious deeds of assassins and robbers would be encouraged and multiplied, for, they could, without apprehension, trample under their feet the laws of the State, of society and of God, the rights, the flesh and the lives of those who have been brought to trust to those laws for their protection.

In so far as it orders the suspension of defendant, as sheriff of the parish of Morehouse, there is no error in the decree appealed from, and that decree is affirmed with costs.

## ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by

MANNING, C. J. An application for rehearing has been made by the respondent's counsel. The zeal of the advocate has nearly betrayed him into indecorum. It would be justified if the consequences, imagined

and depicted by him, could legitimately ensue from our decision. His argument is that because the constitution has provided specific modes of *removing* certain officers, therefore a judge cannot suspend a subordinate officer of his court.

Disciplinary power belongs to a court from its constitution, and the purpose of its creation. The judge impersonates the law. He represents its majesty, its dignity, its authority. The officers of his court are necessarily under his supervision. If either of them grossly neglect or violate his duty, as by contemning his authority or refusing to obey his legal orders, he should punish him for contempt. But when the officer contemns the law itself, when he puts its mandates at defiance, when he wilfully neglects or refuses to serve the process by which a criminal is to be arrested, and thus mocks at and despises the law which prescribes his official conduct, it is proper that the exercise of his functions should be suspended. The power to protect itself is inherent in a court. It dare not permit the arm of the law to be palsied by the contumacy of its executive officer.

The constitution directs how certain officers shall be impeached, and also that all civil officers shall be removable by an address of the General Assembly, except those whose removal is otherwise provided for by the same instrument. (art. 106.) Thus much for the mode of removing. Then follows the provision to prevent an interruption of the public business because of a vacancy. (art. 122.) All officers shall continue to discharge the duties of their offices until their successors shall have been inducted into office, except in cases of impeachment or *suspension*. So then the suspension of any officer, so far from being discountenanced and abhorred by the constitution, is expressly mentioned in it. Such a thing may happen. The constitution foresees that it will happen.

The Legislature therefore provided for the particular case, where the court from its inherent power would have a right to suspend, and proceeded to guard it with restrictions. The act of 1868 prescribes the formal proceedings through and by which the sheriff or his deputy, or the coroner or a constable who has failed to make an arrest, may be brought before the court. The prosecuting officer of the court must bring the delinquency of the sheriff or other executive officer, to the knowledge of the judge by a written statement, and any other person may do this if he swears to the statement, and upon hearing all parties, the power of suspension is conferred. (Acts 1868, p. 161) The next section opens with these words:—it is the spirit and intention of this act that the several judges in this State shall have a general supervisory control over the officers appointed by the law to execute the writs issuing from, and the orders of the courts—and this is but the enunciation of that power that courts must have, and must exercise if need be, unless their

authority is to be reduced to impotency, and their personation of the vigor of the law to be transformed into a mere simulacrum.

The respondent says that a suspension sometimes may operate as a removal, as for instance when made near the close of the term of office. The enforcement of many laws produces effects not contemplated by the law.

And he adds, this power is liable to abuse. So is all power. But the exercise of this power under this law is surrounded with formalities and deliberation of proceeding that guard against rash action, and secure to the officer a fair hearing. The very presence of this appeal before us shews that the judge cannot act arbitrarily to the detriment of the officer, without the latter's right to have the causes of the suspension inquired into. And we have confined ourselves to the consideration of the suspension of an executive officer of a court by the judge of that court.

Rehearing refused.

## DISSENTING OPINION.

EGAN, J. I regret that I have not been able to present fully the reasons which induce me to dissent in this case from the conclusions of the majority of the court. I, however, reserve the right of doing so hereafter. I do not believe that under pretext of mere disciplinary power such as is necessarily and properly lodged in the courts for their own protection and efficiency, the sheriff, a constitutional officer, elected by the people, and whose term of office is fixed in the constitution itself, can be either suspended or removed from office in any other manner than that pointed out by the constitution. I do not think the Legislature could itself exercise such power in any other manner than by address, and it can not confer it on other officers. I concur fully in the general sentiments of the opinion prepared by Mr. Justice DeBlanc as the organ of the court. Such a record of official misconduct could only have come to us as the outgrowth of the disordered condition of things in this State under usurping governments too feeble and too little respected to enforce authority.

Happily, we are now emerging from that unfortunate condition and may again look for the restoration and preservation of law and order through the aid of courts sustained by an energetic executive and a supporting public sentiment. There is, in my opinion, no longer excuse or occasion for such legislation as that invoked in this case. Every judge has the power independent of it, to punish the officers of his court for contempt of his authority or disobedience of his mandates. This may

State ex rel. Vaughan vs. Richmond, Sheriff.

be repeated as often as occasion may require, and once assurance is felt that this power will be exercised whenever necessary, its exercise will seldom become necessary. Meanwhile the business of court need not stop, as in case of inability of the sheriff to act, the law provides another officer, the coroner, to act in his stead, and, indeed, the sheriff's deputies might act none the less while he himself is undergoing punishment for contempt. This disciplianary power was always found sufficient, during the many years of normal government of the State, to the enforcement of all proper authority. In my opinion it will be found now to be so again without a resort to the extraordinary legislation relied upon in this case, neither the origin nor probable objects of which can be commended. However richly deserved, I do not think the suspension of the defendant was authorized by the constitution.

No provision is made in that instrument for the *suspension* of sheriffs at all. *They may, however, be addressed* out of office. The suspension in the present case was a practical removal by the mere order of the judge. When specific modes of proceeding are provided by law, especially in a matter so important, they must be strictly pursued.

This I understand to have been the uniform current of the decisions of this court.