(90 N. W. Rep. 265.)

---

STATE *ex rel* A. W. CLYDE *vs.* W. S. LAUDER.

---

Prosecuting Attorneys—Refusal to Act—Compensation of Substitute— Deduction from Prosecutor's Salary—Propriety—Review by Certiorari.

W. Q., who was the defendant in a certain criminal action instituted in McIntosh county, after a preliminary examination, was held to answer in the district court for a public offense. The state's attorney of said county, not desiring to prosecute the defendant further, filed his reasons therefor with the clerk of the district court, pursuant to the provisions of section 7984, Rev. Codes 1899. The district court overruled said reasons, and by an order entered in the minutes declared that it did not deem the state's attorney a proper person to prosecute the criminal action in question, and by a subsequent order entered in the minutes appointed one L., an attorney at law, to act as prosecutor in said criminal action. By a still later order, reduced to writing and filed with the clerk of the district court after court had adjourned for the term the presiding judge directed the auditor of said county to deduct from the salary of the state's attorney the sum of $100, which amount

was the sum fixed by said order as the compensation of L. for prosecuting the action. In said last-mentioned order the grounds for deposing the state's attorney and for appointing L. to prosecute are stated as follows: "And said attorney in open court stated that in his opinion the said defendant should not be prosecuted, and refused to proceed with the prosecution of said cause," etc. *Held*, conceding, for the purposes of this proceeding only, that the above-quoted grounds of the order made by the trial court, requiring the county auditor to deduct $100 from the salary of the state's attorney, are true, and conceding that the state's attorney willfully refused to file an information and prosecute said criminal action, that such order was made without authority of law, and the same is null and void. There was a state's attorney for McIntosh county, and he was not absent from court, nor was he "unable" by reason of bodily or mental disability, to "perform the duties of his office." Therefore none of the statutory conditions authorizing an order making deductions from the salary of the state's attorney existed in this case. See section 1986, Rev. Codes. *Held*, further, that a refusal to prosecute, or willful misconduct in office, will not justify any such order in a case where the state's attorney is present in court and able to perform his official duty. *Held*, further, that the order depleting the salary of the state's attorney is not an 'appealable order, and that for the injury necessarily resulting from such an order the law in regular course does not afford a remedy which is plain, speedy and adequate. Hence the writ of certiorari is the proper remedy to bring up such order for review.

Certiorari by the state of North Dakota, on the relation of A. W. Clyde against Hon. W. S. Lauder, judge of the Fourth judicial district, and Paul Kretschmar, clerk of the district court for McIntosh county, to review an order of the court deducting from relator's salary as state's attorney the compensation to another attorney appointed to prosecute a criminal action. Reversed.

*Morrill & Engerud,* for plaintiff.

The district judge has power to appoint pro tempore a state's attorney when the state's attorney is unable to perform his duties or is absent, and when there is no state's attorney in the county. Section 1896, Revised Codes. The state's attorney was present and actually performing his duties. The statute imposes upon him the duty of examining the facts and determining whether the defendant should be informed against. His duties are quasi judicial in this respect. If the state's attorney in bad faith refuses to act there is ample remedy by contempt and proceedings for removal from office and the court can call a grand jury or the people of the county can petition for a grand jury. Sections 7986 and 1985, Rev. Codes. Neither the letter nor the spirit of the law sanctions the construction of the word "inability" as equivalent to the word "refusal." Certiorari is the proper remedy in this case. *State* v. *Ross,* 4 N. D. 319, 331-333.

*M. A. Hildreth* and *Nels Larson,* for defendant.

The duties of the state's attorney as a public prosecutor are de-

fined by the Code, § 1979, Rev. Codes. When the state's attorney is absent or unable to attend to his duties and when necessary the court may appoint by an order to be entered in the minutes of the court, a suitable person as attorney to perform for the time being the duties required by law of the state's attorney. Section 1986, Rev. Codes. Relator refuses to prosecute one William Quatier assigning as his reason therefor that the facts did not show defendant guilty of a public offense but that he believed defendant to be the victim of a high-handed outrage which deserved stern rebuke. Upon this showing relator was disqualified and unable to attend to his duties within the meaning of § 1986, Rev. Codes. *Korth* v. *State,* 65 N. W. Rep. 792.

WALLIN, C. J. In this proceeding a writ of certiorari issued out of this court upon the petition of the relator, A. W. Clyde, who at all times in question was the duly elected and qualified state's attorney of the county of McIntosh, in this state. The petition for the writ is as follows:

"A. W. Clyde, being first duly sworn, states on oath that he is, and for more than one year last past has been, the duly elected, qualified, and acting state's attorney, in and for McIntosh county, state of North Dakota. That Hon. W. S. Lauder is, and for more than one year last past, has been, the duly elected, qualified, and acting judge of the Fourth judicial district of the state of North Dakota. That Paul Kretschmar, during said time, has been, and is now, the duly elected clerk of the district court of McIntosh county, North Dakota. That, previous to the convening of the last regular term of the district court in and for McIntosh county, a criminal prosecution was commenced in justice's court, before John J. Doyle, a justice of the peace of McIntosh county, on the complaint of one Ed. Lunn, against one William Quatier, as defendant, charging said Quatier with the crime of resisting an officer while in the discharge of his official duties. That said prosecution was instituted without the approval or consent of this affiant, and such proceedings were had in said action before said justice that said William Quatier was bound over to appear before the district court, at the next regular term, to be held in Ashley, McIntosh county, on the 14th day of May, 1901, to answer to said charge. That on the first day of the regular May term, 1901, of said district court at Ashley, McIntosh county, North Dakota, to-wit, May 14, 1901, this affiant, as state's attorney of said county, appeared before said court, and filed therein a statement, in writing, of his reasons for not filing an information against said William Quatier, and moved the court for leave to dismiss said prosecution. That a copy of said statement is hereto annexed, marked "Exhibit A," and made a part hereof, and the statements therein are all true, to the best of affiant's knowledge, information, and belief. That afterwards, on the same day, said W. S. Lauder, as judge of said court, denied affiant's

motion to dismiss said prosecution, and directed that information be filed against said Quatier, and thereupon said affiant, in open court, stated and announced that he would file such information as soon as he could prepare the same, but would ask the complaining witness to verify the same, to which statement of the affiant he, the said W. S. Lauder, as judge of said court, replied, by an oral statement, which he then and there made, in words following, to-wit: 'It will not be necessary, Mr. Clyde, for I do not consider you a proper person to have charge of this prosecution, and have decided to appoint another attorney to file the information and have charge of the prosecution,' or in other words in the same import; that later in said term, to-wit, on May 16, 1901, said W. S. Lauder, as presiding judge, in open court, orally appointed one Nels Larsen, Esq. of La Moure county, North Dakota, to file information and conduct the prosecution against said Quatier, but did not fix the amount of compensation for said services, or make any order or announcement as to the payment thereof, or the retention of the same, or any part thereof, out of the salary of affiant as state's attorney, and did not make or file, or cause to be entered in the minutes of the court, any formal order appointing said Larsen until the evening of May 17, 1901, after the final adjournment of said court for said term, as affiant is informed and believes; when he made and filed with said clerk, and caused to be entered on the minutes of said court, an order, a true copy of which is hereto attached, marked 'Exhibit B,' and is made part hereof for reference. That the recital in said order to the effect that affiant had refused to prosecute said criminal action against William Quatier is not true, but, on the contrary, the facts are as hereinbefore stated in this affidavit. That, pursuant to the directions and order of said Judge Lauder, said order (Exhibit B) was served upon the board of county commissioners and auditor of said McIntosh county; and in obedience thereto said auditor refuses to pay affiant his lawful salary in full, but withholds from him the sums payable to said Larsen by the terms of said order. That said order of the said district court was and is illegal and void, and in excess of the jurisdiction vested in said court, or the judge thereof, in this: that it falsely recites that affiant refused to prosecute said criminal action; and further directs that part of affiant's salary shall be withheld from him and paid to said Nels Larsen, although this affiant was then and there the duly elected, qualified, and acting state's attorney of McIntosh county, and was then and there, at all times, present, able, qualified, and willing to act in said matter; and in recommending the dismissal of said prosecution was acting in the due and lawful performance of his duties as such state's attorney. Affiant therefore prays that the honorable, the supreme court of the state of North Dakota, cause a writ of certiorari to be issued out of said court to the judge and clerk of the district court in and for McIntosh county, requiring that all the records, papers, and facts in reference to the

matter herein complained of may be certified to the supreme court, to the end that it may be informed in relation to said matter, and may vacate, annul, and set aside said unlawful proceeding, or grant such other relief therefrom as justice and law may require."

The mandate embodied in the writ, so far as the same is material, is as follows:

"Now, therefore, these presents are to command you, the said defendants, to certify and transmit to the supreme court of the state of North Dakota all records and proceedings had in the district court in and for McIntosh county, Fourth judicial district of the state of North Dakota, in relation to that certain order made on the 17th day of May, 1901, and filed in the office of the clerk of the district court of McIntosh county on said day, entitled in a criminal action against William Quatier, by which order one Nels Larsen was appointed in the place of A. W. Clyde to prosecute said action, and whereby said Nels Larsen was allowed a fee of one hundred dollars, to be deducted from the salary of A. W. Clyde, as state's attorney of said McIntosh county, and you are further required to state and fully inform this court in relation to the following matters alleged in said affidavit of A. W. Clyde: (1) Whether said order complained of in said affidavit of A. W. Clyde was made before or after the final adjournment of the regular May, 1901, term of the district court of McIntosh county? (2) Whether or not said A. W. Clyde, as state's attorney, was unable to attend to his duties and to prosecute said criminal action against William Quatier mentioned in said affidavit, and also showing the facts and circumstances relative thereto? And you will file your return to this writ with the clerk of this court at Bismarck on or before the 6th day of January, A. D. 1902, to the end that this court may review said proceedings and make such orders in relation thereto as law and justice may require, and the hearing on said return will be had at Fargo, N. D., at the opening of the Fargo session of the March, 1902, term of this court, or as soon thereafter as counsel can be heard."

The writ was served upon the defendants, and in obedience thereto the defendants certified to this court all the records, orders and papers referred to in the writ, including the files in the criminal action wherein the state of North Dakota is plaintiff and William Quatier is defendant; and defendants also filed in this court, in response to the requirements of paragraphs numbered 1 and 2 of said writ, certain affidavits, viz., the affidavit of the Honorable W. S. Lauder, who made the order complained of by the relator; also the affidavits of one A. P. Guy and one E. H. Lunn. The relator has also filed certain counter affidavits in this court, viz., affidavits made, respectively, by Johann Meidinger, W. A. Linn, Gottfrey Bietz, and A. W. Clyde. The return shows that the papers filed with the justice of the peace in the criminal action in which said William Quatier was defendant were on file with the clerk of the district court for

McIntosh county when that court convened at a regular term thereof, held for said county on the 14th day of May, 1901.

It appears that as soon as court opened on the first day of said term the relator herein in open court suggested to the court that said criminal action against Quatier ought not to be further prosecuted, and that the same should be dismissed, and in connection with such suggestions the relator filed with the clerk of that court a writing setting forth the reasons upon which said suggestions were founded, which reasons were read to the court, and are as follows:

"Upon the examination of the return of the justice herein, and after full inquiry into the facts and circumstances on which the prosecution is based, I am of the opinion that an information ought not to be filed herein for any offense whatever. Following are my principal reasons for such determination: (1) The pretended complaint does not purport to show that the prosecution was commenced or carried on before the justice by authority of the state of North Dakota or of its laws. (2) Said complaint does not appear to have been submitted to the state's attorney for his approval as to the issuance of a warrant thereon, or approved by him to the same, or purport to show why it was not so submitted; and no sufficient cause why the same was not so submitted appears from other competent evidence. (3) Said pretended complaint does not state facts charging any public offense, either in words of the statute, or equivalent words, unless, possibly, the offense of assault and battery. (4) An offense covered by the allegations of said pretended complaint, or growing out of the said transaction therein alleged, or necessarily connected therewith, and of which the defendant is sufficiently appraised by said allegation, cannot be charged herein, of which the defendant can or ought to be convicted, for the reason that the evidence would, in my judgment, justify the finding that the officer was a trespasser upon the premises of the defendant attempting to levy an execution upon exempt property of the defendant or of his wife, and enforcing his attempt by the unlawful use of a revolver, which he carried concealed, and with which he seriously wounded defendant's wife in the prosecution of such unlawful attempt, all done in the presence of and with the implied sanction of the attorney for the execution plaintiff; and that defendant used no more force in opposing such attempt than was necessary to protect his constitutional rights in the premises. (5) The return of the justice shows that the preliminary examination was conducted in shameless disregard of defendant's lawful and constitutional rights in the premises, in not informing him of his right to counsel, in compelling him to enter a plea, and to give testimony against himself. (6) Believing that the facts do not show the defendant guilty of a public offense, but, on the contrary, that he is a victim of a high-handed outrage, which deserves stern rebuke, I cannot verify an information in the form prescribed by law. (7) While I was prostrated by sickness, and before I went away for

treatment, I was visited by the officer in question, accompanied by the attorney for the execution plaintiff, and requested to deputize said attorney to prosecute said defendant in the premises, .which I refused to do, for the reason that upon his own admission he had previously had difficulty with said defendant over the claim they were so trying to collect, in which both parties became angry and threatening, and for the further reason that I had some reason to believe said attorney was otherwise interested in said claim, and therefore I did not deem him a suitable person for that purpose; and I then and there refused to sanction such prosecution, or the issuance of a warrant, until I could make further investigation, stating to said officer that, as we both well knew, there was not the least reason to apprehend that said defendant would attempt to escape from the county. A. W. Clyde, State's Attorney. Ashley, May 14, 1901."

This document was presented to the district court at its morning session, and, so far as the minutes of the proceedings of the court, as kept by the clerk, show, no further action was had in the matter until after the noon recess of the court. When the court reassembled the following order was made and entered in the minutes by the clerk: "At 2 o'clock p. m. same day. *The State of North Dakota* vs. *William Quatier.* Now, on court convening at 2 o'clock p. m., comes now A. P. Guy, Esq., and files affidavit in opposition to discontinuing the prosecution. Thereupon it is ordered that the reasons of A. W. Clyde, state's attorney, be overruled, and that information be filed. And that it is the court's opinion that A. W. Clyde is not a proper person to prosecute this action." The next entry made in Quatier's case in the minutes of the district court is as follows: "Third day, May 16, 1901. *The State of North Dakota* vs. *William Quatier.* Now, on the opening of court on this day, it is ordered that Nels Larsen, Esq., is duly appointed acting state's attorney by the court to file an information and to prosecute this action until final determination thereof. Formal order will be drawn by the court and filed, and fixing compensation." The clerk's minutes show that further proceedings were had in the criminal action, but such proceedings are not material, and will not be further mentioned, except to say that said A. W. Clyde took no part therein, and the state was represented by said Nels Larsen as state's attorney pro tem. The minutes of the district court further show that said term of court adjourned on May 17, 1901, and the following entries appear in the minutes of the court as of said date: "Court adjourns until 8 o'clock p. m. of same day, with the announcement that the business of the term is ended, except that the court has some orders to file. Afterwards on the same day, between the hours of 7 and 8 o'clock p. m., Hon. W. S. Lauder, judge of the court, returns to the court room, procures the papers in the said action, and dismissed the clerk, with the explanation that he wanted the papers at the hotel. And at 8:30 o'clock p. m. same day, on the street in Ashley, said judge delivered papers to the clerk, with an

order appointing Nels Larsen, Esq., as attorney to file information and to have charge of the prosecution of said action, and fixing his compensation, which order he directed to be filed and served. Order filed and served accordingly." The written order handed to the clerk of the district court by Judge Lauder is as follows:

"It appearing to the court that on the 27th day of December, 1900, an information, duly verified, was filed in the office of John J. Doyle, justice of the peace within and for McIntosh county, North Dakota, in which said information it was charged that the said defendant, William Quatier, did, on the 11th day of December, 1900, commit the offense of resisting an officer in the discharge of his official duties, with force and violence, and by means of a dangerous weapon; and it further appearing that on the 27th day of December, 1900, after an examination held, the said defendant was, by the said John J. Doyle, duly held to answer to the district court in and for McIntosh county for said offense, and that the said William Quatier did give bonds for his appearance at the next term of said court in the sum of five hundred dollars; and it further appearing that on the 14th day of May, 1901, upon the opening of the regular term of the district court in and for McIntosh county, A. W. Clyde, state's attorney in and for said county, filed in the clerk of court's office his reasons for refusing to file an information against said William Quatier and prosecute said cause, and said state's attorney in open court stated that in his opinion the said defendant should not be prosecuted, and refused to proceed with the prosecution of said cause: The court, being of opinion that an information should be filed against said defendant, and the said cause prosecuted, it is hereby ordered, that Nels Larsen, Esq., attorney and counselor at law of this state, and a resident of this state, be, and he hereby is, appointed acting state's attorney in and for said county of McIntosh, for the purpose of filing an information against said defendant in said action and prosecuting said action until the final determination thereof. It is hereby further ordered that the fee of the said Nels Larsen, Esq., be, and the same hereby is, fixed at the sum of one hundred dollars, payable as follows: Fifty dollars at once, and fifty dollars when said cause shall have been finally disposed of, and the county commissioners of McIntosh county, and the auditor of said county, are hereby directed to retain from the salary of said state's attorney of McIntosh county the said sum of one hundred dollars. Dated at Ashley, North Dakota, this 16th day of May, 1901. By the court, W. S. Lauder, Judge."

When this proceeding came on to be heard before this court, counsel for the defendants moved to quash the writ upon the ground that the petition filed by the relator shows upon its face that the relator is entitled to no relief. This motion need not be further mentioned except to say that the same was denied, and thereafter the case was submitted to this court for determination upon the merits, and in disposing of the case this court has considered, in

addition to the papers embodied in the record proper, the affidavits
and counter affidavits before mentioned. Said affidavits have refer-
ence wholly to a controversy of fact concerning what was said in
open court respectively by the presiding judge and the relator on
the first day of said term of the district court regarding the further
prosecution of said criminal action by the relator, especially as to
the attitude assumed by the relator with reference to the further
prosecution of that action. The affidavits submitted in behalf of
the relator are unanimous in their statements to the effect that after
the trial court had orally announced its decision overruling said
reasons and grounds as filed by the relator, as above set out, and
had announced its decision declaring that said criminal action should
not be dismissed, but that the same should be further prosecuted,
that the relator then and there, upon hearing said decisions, said and
stated to the court, in substance, that he, the relator, would proceed
to prosecute the case, and that the relator then used the following
words: "Well, I will file the information as soon as I can prepare
it, but I will ask the complaining witness to verify it;" or used other
words of the same import as those above quoted. On the other
hand, the affidavits of Judge Lauder and of A. P. Guy positively
deny that such words as those quoted above, or other words of the
same import, were there used by the relator, and deny in substance
that the relator at any time on the first day of said term, or before
the appointment of said Larsen as state's attorney pro tem., offered
to frame an information or otherwise act in behalf of the state in
prosecuting said criminal action; but in neither of said affidavits
filed in behalf of the defendants is the statement made that the re-
lator in terms refused to prosecute said action. But, on the con-
trary, it is alleged in Judge Lauder's affidavit that "from the dis-
closures there made, he, as presiding judge of said court, became
convinced that the said Clyde did not intend in good faith to prose-
cute said action." Briefly stated, the relator's affidavits are to the
effect that, while the relator, for reasons given in writing and filed
with the clerk, was opposed to the further prosecution of the crim-
inal action, that he at no time refused to prosecute the same, but,
on the contrary, expressly offered to prosecute the same. The
counter affidavits flatly deny that the relator offered to prosecute
the criminal action, but do not, in terms, allege that he refused to do
so. But the written order made by Judge Lauder and handed by
him to the clerk after court adjourned for the term, and which is
above set out at length, embraces the following language: "And
said state's attorney in open court stated that in his opinion the said
defendant should not be prosecuted, and refused to proceed with the
prosecution of said case."

In justice to both parties we have briefly, but carefully, stated
the issues of fact presented by the conflicting affidavits; but, for
the purposes of deciding the case, and for such purposes only, we
shall resolve the controverted questions of fact in favor of the

defendants. In the judgment of this court it is wholly immaterial whether Judge Lauder made the order of which the relator complains on account of the absolute refusal of the relator to further prosecute the criminal action, or whether, on the other hand, he made the order for the reason that he did not, in view of all the disclosures of the case, deem the relator to be a proper person to conduct the prosecution of said criminal action. Either one reason or the other, in our opinion, affords ample ground for deposing the relator and appointing another attorney to prosecute the particular criminal action in question. The common-law rule was that the public prosecutor, the attorney general, had absolute control of criminal prosecutions, and was vested with the responsibility of deciding whether a criminal accusation should or should not be pressed to trial. The right to file a nolle prosequi at any time before trial was a prerogative of the executive branch of the government, and this prerogative was not shared by judicial officers. See Whart. Cr. Pl. & Prac. (9th Ed.) § 383. But the more modern rule, and that adopted in this state, is the reverse of that at common law. In this state, while the prosecutor may file with the court his reasons for not filing an information in a criminal action, it is the province of the court to determine the ultimate question whether the case shall be prosecuted or dismissed. Rev. Codes 1899, § 7984. In such cases it is optional with the court to direct either the state's attorney or another attorney appointed by the court to file an information and bring the case to trial. In the case at bar it appears that the trial court was not satisfied with the reasons of the state's attorney filed with the clerk for not filing an information in the criminal action, and overruled such reasons. On reaching such conclusion the trial court proceeded to appoint another attorney to prosecute said criminal action. The statute does not, in terms, make it the duty of the trial court in such cases to spread upon the record any grounds or reasons for appointing an attorney other than the state's attorney to conduct the prosecution; but it is doubtless proper to do so, and we are of the opinion that it would be a legitimate exercise of discretion to appoint an outside attorney in such cases if the trial court should reach the conclusion that the state's attorney of the county for any reason was not a proper person to prosecute the case, and this course would be clearly proper in case of the refusal of the state's attorney to file an information or to prosecute a case. Hence we have no doubt that the court, in deposing the state's attorney and in appointing Larsen to prosecute the criminal action against Quatier, acted strictly within the limits of its discretion. We are equally clear that the writ of certiorari would not have issued in this case, and would, if issued, be quashed, if the writ were invoked for the purpose of annulling the order of May 14th or of May 16th, as made and entered in the mintues of the district court, and whereby the relator was deposed as prosecutor

and Larsen was appointed to prosecute the action against Quatier. But the writ was not issued for any such purpose. On the contrary, it was issued to bring before this court another order, i. e., that dated on the 16th, and filed after court adjourned on the 17th day of May, 1901, a copy of which is annexed to and forms the principal basis of the relator's petition for the writ. The order filed after the court adjourned for the term is of a different character, and embraces a feature not contained in either of the said orders of the district court as entered in its minutes on May 14th and May 16th.

The new feature embraced in the written order filed with the clerk contained this language: "And the auditor of said county is hereby directed to retain from the salary of said state's attorney of McIntosh county the sum of one hundred dollars." This feature, it will be noticed, is one not suggested in the previous orders of the court, and it is conceded that the relator never had an opportunity to be heard upon the matter of deducting Larsen's compensation from relator's official salary. Upon this state of facts this court is confronted by the question whether the trial court acted within the limits of its authority in making the particular order complained of, i. e., that last above quoted. The order complained of purports to deplete the official salary of the relator in the sum of $100. This drastic remedy was sought to be applied by a summary ex parte order made by the district court. If the power exists to make such an order it will be found in section 1986, Rev. Codes 1899. A careful perusal of that section discloses the fact that the authority to deplete the salary of a state's attorney is not a discretionary authority, but, on the contrary, the power is mandatory, and one which the law requires to be exercised absolutely when either of the prerequisite conditions exist. When either of the specified conditions exist the district court is required to act by appointing a prosecutor pro tem., and in all such cases the compensation of the appointee is required to be deducted from the salary of the state's attorney. It is obvious that this severe statute should receive at the hands of the courts a strict construction, and in no case not clearly within its letter and spirit should the statute be held to apply. The statute reads: "The district court whenever there shall be no state's attorney for the county or when the state's attorney is absent or unable to attend to his duties may, when necessary appoint," etc. In the case at bar McIntosh county had a state's attorney, and it is conceded that its state's attorney was not absent from the session of the court in question; and hence this section of the statute did not authorize the appointment of Mr. Larsen as acting state's attorney, unless the relator was in fact "unable to attend to his duties." There is no claim made by the defendants that the relator was at the time in question "unable" to perform his duties on account of either bodily or mental disability, or otherwise unable. He was neither sick nor insane, nor disqualified

by intoxication. In fact no suggestion can be found in this record leading to the conclusion that the relator was at any time "unable to perform his duties." Precisely the opposite appears. He was not only present and able to act, but he did act in the criminal action in question. The grand jury of the county had not returned an indictment against Quatier. In such cases no more important duty devolves upon state's attorneys than that of ascertaining from the facts, circumstances, and evidence, whether or not an information should be filed. If, upon such examination, the conclusion is reached that no information should be filed, the statute in express terms makes it the duty of the state's attorney to "make, subscribe and file with the clerk * * * a statement in writing setting forth his reasons in fact and in law for not filing an information." Section 7984, Rev. Codes 1899. We have seen that the state's attorney has performed this duty in the case of Quatier, and that he reached the conclusion that no information should be filed in that case. It is true that the trial court, acting within its powers, overruled the reasons filed by the state's attorney, and appointed an attorney to prosecute that case, but these facts do not operate to confer any power upon the district court to enter an order depleting the official salary of the state's attorney. Instead of showing that the state's attorney was "unable" to act in Quatier's case, the facts narrated in the record demonstrate that he was both able and willing, and also that he did in fact, act in that case.

We have assumed for the purposes of the case that Judge Lauder's version of the facts is correct, and that the relator refused to file an information and refused to prosecute the criminal action in question. Such refusal, if willful, would constitute a misdemeanor under section 7363, Rev. Codes 1899, and it would also render the relator liable to prosecution for professional misconduct. See *In re Voss* (N. D.) 90 N. W. Rep. 15. For such misconduct the relator could also be removed from office by a proceeding instituted in the district court for that purpose. See section 7838, Rev. Codes 1899. It would seem that these provisions of the statute were sufficient to operate as deterrents, and that the same will afford ample remedies for any professional or official misconduct of which the state's attorney can well be found guilty. At all events, the legislature has not seen fit to subject any of this class of officers who may be guilty of professional or official misconduct to further penalties and forfeitures, such as were attempted to be imposed upon the relator. Under the statute deductions may be made from the salary of the state's attorney when he is absent, or when he is laboring under a disability, physical or mental, which renders him "unable to perform his duties," but the lawmaker has not declared, and we think could not constitutionally declare, that the district court should have the arbitrary authority to deduct from the salary of a state's attorney guilty of official misconduct any sum or amount which that tribunal might see fit to exact by an ex parte order made for such

purpose. It is a serious matter to charge an officer with the crime of official misconduct, and in this state no officer can be subjected either to discipline or to penalties, civil or criminal, for misconduct in office, until he has had an opportunity to defend himself before a court of competent jurisdiction. Our conclusion is that the mere fact, conceding it to be a fact, as claimed, that the relator acted in bad faith in filing his reasons for not prosecuting Quatier, and if it is a fact that he refused to prosecute, as defendants claim, then his refusal to prosecute, even if done willfully and corruptly, did not confer upon the district court any authority whatever to order a deduction to be made from the relator's salary. The right to appoint Larsen and to fix his compensation we do not question under the facts in the record to which we have referred, but the naked right to do this furnishes no excuse for an ex parte order, or any order, deducting $100 from the relator's official salary. No statute permits an appeal from the particular order complained of, and for the substantial injury which necessarily results · from such an order, the law, in its ordinary course of administration, affords no plain, speedy, or adequate remedy. In such cases the writ of certiorari may be invoked where inferior courts or tribunals have exceeded their jurisdiction. Section 6098, Rev. Codes 1899. See, also, *State* v. *Rose*, 4 N. D. 319, 331, 333, 58 N. W. Rep. 514.

The order of the district court annexed to the petition herein, and which was filed with the clerk of the district court on May 17, 1901, in so far as the same directs the county auditor of McIntosh county to retain from the salary of the state's attorney of that county the sum of $100, being made without authority of law, was null and void from the beginning, and this court will enter an order annulling the same. All the judges concurring.