49    69
50   266
51    27

49    69
f58   126
f59   319

WALTER L. TAYLOR, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Pleas in abatement must be certain to certain intent in every particular. They must leave nothing to be supplied by intendment and no supposable special answer unobviated.

2. A plea in abatement to the effect that L., and attorney of the Circuit 'Court, without the procurement or consent and over the objection of the State Attorney was permitted by the court to appear before the grand jury during the examination of evidence and witnesses and to advise the grand jury upon legal points relating to the finding of the indictment, the State Attorney being attendance on the court, and not being from any cause unable to perform the duties of his office, but not being present with the grand jury, without alleging that the State Attorney was ready and willing or offered to perform his duties, is bad on demurrer. TAYLOR and HOCKER, JJ., dissent.

3. When a State Attorney, though in attendance upon the court, refuses to discharge his duties the court has the implied power to appoint some other member of the bar to appear before the grand jury during the examination of the evidence, to advise them on questions of law and to frame indictments. TAYLOR and HOCKER, JJ., dissent.

4. A plea in abatement to the effect that there were two persons qualified to be jurors, the names of whom were in the jury box, named J. P. Billingsley and J. A. Billingsley respectively; that the name of J. A. Billingsley was drawn from the box while the name of J. P. Billingsley was not; that J. A. was temporarily absent from the county and J. P. was summoned by the sheriff and appeared and served as a member of the grand jury which found the indictment, is bad on demurrer in the absence of allegation that the said J. P. falsely impersonated J. A. or fraudulently procured himself to be placed upon the grand jury

or that he was not known under the name of one of those who served as jurors.

5. There is no reversible error in permitting a special replication in addition to the general replication to a plea in abatement when the special replication puts in issue the sole material issue raised by the plea.

6. When a plea in abatement and a plea to the merits are tried at the same term of the court it is proper to present all the exceptions taken on the trial of either plea in a single bill.

7. Offers of testimony having no bearing on issues remaining of records are properly rejected. TAYLOR and HOCKER, JJ., dissent.

8. It is not error to refuse to permit a grand juror to be asked: "State whether or not the indictment in this case was ignored, and afterwards, without further testimony this indictment was found?" The court will not inquire into the character of the evidence that influenced the grand jury for the purpose of impeaching an indictment. TAYLOR and HOCKER, JJ., dissent.

9. Questions are properly refused that hypothesize the existence of supposed facts into which the policy of the law will not permit an inquiry. TAYLOR and HOCKER, JJ., dissent.

10. On the trial of one convicted of an assault with intent to murder there was no reversible error in permitting a witness familiar with sticks to testify that a stick weighing eleven ounces composed of sole leather washers built over steel rod and varnished so as to resist water, if "rightly used in the hands of a powerful man might prove a deadly weapon; it depends on how the man stands and how hard it strikes." The stick was exhibited to the jury and it was shown that the accused used also a loaded pistol.

11. The evidence examined and deemed sufficient to support the verdict.

Taylor v. The State of Florida—Statement of Case.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Leon County.

STATEMENT:

This case was taken up for consideration by Division B, but there being a difference of opinion among the members of the division, was referred to the court *en banc.* for decision.

The plaintiff in error was indicted at the Spring term, 1903, of the Circuit Court of Leon county for the crime of assault with intent to murder, he was tried at the Fall term of said court, 1903, and was convicted of assault with intent to commit manslaughter, and from the sentence imposed sued out writ of error here.

Before pleading the general issue the defendant interposed three pleas in abatement as follows: "1. That one B. S. Liddon, an attorney of this court, without the procurement of George W. Walker, the State Attorney for the Second Judicial Circuit of the State of Florida, and without the consent of said State Attorney, and against the consent and over the objections of said State Attorney, was permitted by the court to appear before the grand jury who found this indictment, and to be present with said grand jury during the examination of evidence and witnesses on whose testimony this indictment was found, and to advise said grand jury upon legal points relating to the finding of this indictment, and to frame this indictment, the said State Attorney, George W. Walker, being then in attendance upon said court, and not being from any cause unable to perform the duties of his office, but not being present with said grand jury."

"2. And for a second plea the defendant says: That one B. S. Liddon, an attorney employed to procure this indictment and to prosecute this defendant, not being a duly qualified State Attorney, and without the procurement of George W. Walker, the duly qualified State Attorney for the Second Judicial Circuit of the State of Florida, who was then in attendance upon the court, and against the consent and over the objections of said State Attorney, appeared before and was present with the grand jury which found this indictment, during the examination of evidence, and during their deliberations in this case, for the purpose of securing this indictment against this defendant to which this plea is pleaded; and being so present with said grand jury, after all the evidence had been submitted, and at and before the finding of said indictment, he, the said B. S. Liddon, did then and there counsel, request and urge the said grand jury upon the testimony before them to find this indictment, and did procure the said grand jury to find and return said indictment; and that during the times that said B. S. Liddon was present with said grand jury, George W. Walker, the duly appointed State Attorney for the Second Judicial Circuit of Florida, was in attendance upon said court, but was not present with said grand jury, but the said B. S. Liddon was in the sole and exclusive charge and management of the said case before the said grand jury."

"3. And for a third plea the defendant says: That the board of county commissioners of Leon county, aforesaid, at their adjourned meeting in January, A. D. 1902, held at the Circuit Court Clerk's office in the city of Tallahassee, Tuesday, the 21st day of January, A. D. 1902, in conformity to section 3 of Chapter 4122 laws

of Florida, selected and made out a list of three hundred persons properly qualified to serve as jurors, and in such list of persons so selected were one J. A. Billingsley and one J. P. Billingsley; that the names of the persons so selected were numbered on the record of said list so made out in consecutive order, and the number appearing opposite the name of the said J. A. Billingsley was 240, and the number appearing opposite the name of the said J. P. Billingsley was 247; that the names of the persons contained in said list with the corresponding number set opposite such names respectively were written on separate pieces of paper by the clerk of the Circuit Court of said county, and were deposited as required by law in the jury box; that at the Fall term of the Circuit Court of said county, A. D. 1902, the judge of said court in open court, and in the presence of the clerk and sheriff of said county drew from said box the names of thirty persons to serve as jurors at the Spring term, A. D. 1903, of said court, and that among the thirty names so drawn by said judge was the name of J. A. Billingsley, written on a piece of paper with the corresponding number 240 written in front thereof; that among the thirty names so drawn the name of J. P. Billingsley did not appear and was not drawn; that when said jury list was so made as aforesaid J. A. Billingsley was a resident of the State of Florida and was duly qualified to be placed upon said jury list, but at the time the venire containing the list of thirty names so drawn as aforesaid to serve as jurors at the Spring term, A. D. 1903, of this court came to the hands of the sheriff of said county, the said J. A. Billingsley so drawn as a juror as aforesaid was temporarily absent from the county of Leon, and the said J. P. Billingsley was not in obedience to the said writ of venire, but con-

trary to the direction thereof, summoned by said sheriff and appeared and served as a member of the grand jury at the Spring term, A. D. 1903, of said court which found this indictment."

To the first and third of these pleas, demurrers were interposed by the State and sustained, and to the second plea the State replied as follows: The State, by its attorney, for replication to the second plea says that it is wholly untrue as alleged in said plea that at and before the finding of said indictment the said Benj. S. Liddon in said plea mentioned did then and there counsel, request and urge the said grand jury upon the testimony before them to find the indictment herein, and did procure the said grand jury to find and return said indictment, and the State also takes issue upon said plea. The accused moved to strike this replication "upon the ground that it tenders no issue of fact that can not be proven under the general issue and tends to embarrass the trial of the cause," and upon this motion being overruled, filed his demurrer alleging "that the said replication is bad in substance and sets up no matters constituting a sufficient reply to said plea," which demurrer was likewise overruled. At a subsequent term the issue joined upon the replication was tried to a jury who found for the State, whereupon and at the same term upon a plea of not guilty the said Taylor was convicted of an assault with intent to commit manslaughter and sentenced by the court to a term of five years in the State prison. Other facts appear in the opinion.

*T. L. Clarke, Geo. P. Raney, Fred. T. Myers* and *Thomas Palmer,* for Plaintiff in Error.

*W. H. Ellis,* Attorney-General, for the State.

COCKRELL, J. (*after stating the facts.*)

The sufficiency of the first plea in abatement is strenuously urged before us. Please of this character are most strictly construed against the pleader; in the language of the old books they must be certain to certain intent in every particular. They must leave "on the one hand, nothing to be supplied by intendment or construction; and on the other, no supposable special answer unobviated." Miller v. State, 42 Fla. 266, 28 South. Rep. 208; 1 Bishop's New Crim. Proc. section 327; State v. Duggan, 15 R. I. 412, 6 Atl. Rep. 597, and cases cited. Testing the plea by this rule, and assuming the pleader has made the strongest case possibly consistent with the facts, we must proceed upon the theory that when the court permitted the attorney, Benj. S. Liddon, to do the acts complained of over the objection of the State Attorney who was "then in attendance upon said court and not being from any cause unable to perform the duties of his office, but not being present with said grand jury," that officer was yet unwilling and refused to so perform his duties, and the case was of such a character that the minds of the jury untrained in legal matters needed professional assistance. The allegations that though in attendance upon the court he was yet not present with the grand jury preclude us from indulging the presumption that the official was properly performing his duty before the grand jury in this particular case even should we admit the exceedingly doubtful proposition that in any case a presumption may be indulged to aid defective averments of a plea in abatement to an indictment; especially is this so where the absence appears to be a purely voluntary act on the part of the officer, without any averment exculpatory of such absence. Under this natural,

legitimate, necessary construction of the plea, the questions for us to determine are twofold, first, has the legislature provided a different mode of procedure in such a case, and second, if it has not does the Circuit Court in this State have an implied power to proceed as it did here? Under our constitution a State Attorney is appointed for each judicial circuit, "whose duties shall be prescribed by law, and who shall hold office for four yeas." Article V, sec. 15. The constitution provides therefore only for his creation and tenure of office, his powers, duties and compensation being subject to the legislative will. The legislature has provided for an acting State Attorney, when there shall be a vacancy in the office "by non-appointment or othewise, or if a State Attorney shall not be present at any regular or special term of the court, or being present, shall from any cause be unable to perform the duties of his office." Section 1354 Rev. Stats. of 1892. Such attorney is appointed by the Circuit Judge, and his power ceases upon the arrival of the State Attorney or the cessation of his inability. Section 1355 provides for an assistant to the State Attorney, when the amount of the State business renders it necessary. Such assistant is procured by the State Attorney by and with the consent of the court. These constitute the only statutory methods of substitution or assistance. There is no express provision in our law for procedure should the State Attorney, while present and able, refuse to represent the State. The power of removal in the Governor may act as a deterrent and if applied would prevent a recurrence of the wrong, but it does not afford a remedy, much less an adequate remedy, in a particular case. The law does not contemplate a lapsus through which the guilty, by reason of the complacency, good fellowship or what not of the State Attorney, may escape indict-

ment, and then suffer vicarious punishment through the removal of the office. Whence comes the power of the Circuit Court to make such appointment? Remember we are not concerned at present with the question as to the sources fom which the appointee is to be paid, nor are we called upon to say whether a wholesale appointment that would have the effect of ousting a constitutional officer might not be an abuse of discretion such as this court might feel impelled to revise. Circuit Courts are with us the courts of most general jurisdiction both civil and criminal, successors in sort to Court of King's Bench in England, clothed with most generous powers under the constitution which are beyond the competency of the legislature to curtail. See Ex Parte Henderson, 6 Fla. 279. In the constitutional grant of powers to these courts there are no express nor implied inhibitions against the appointment of such an agency for putting into effect the machinery of our criminal jurisprudence. In so far as the legislature has undertaken to prescribe that machinery, the provision is that the Circuit Judge appoints; thus recognizing, if such recognition be needed, a public policy or implied power, under or from which a *locum tenens* is to be provided should the State Attorney fail from any cause to perform his duties properly. In the instant case we have a *casus omissus,* for which no provision has been made by express legislative enactment, much less is there an express inhibition against the application of that same public policy or implied power. Under such conditions we find the authorities overwhelming, if not unanimous, to the proposition that the Circuit Court has the power to appoint a member of the bar, a wholly impartial person, and in the absence of averment to the contrary in the plea, we must so hold Mr. Liddon to be—to represent the State.

In the examination of the adjudged cases, let us see first what this court has said. In King v. State, 43 Fla. 211, text 222, 31 South. Rep. 254, we held: "It is besides well settled that even in the absence of such a statute trial courts, having criminal jurisdiction, have an inherent power, in the exercise of such jurisdiction to appoint some one to represent the interests of the State temporarily during the absence or inability to act of the regularly chosen officer whose official duty it is to so represent the State's interests," quoting cases from Iowa, Indiana, Kentucky, Mississippi and Texas. We there recognize the court's inherent duty to take the initiative and prevent a failure of the State's interests by reason of the absence or inability to act of the regular State Attorney. Is that inherent or implied duty less active or wholly wanting, so that the State's interest must fail in case the regular State Attorney is unwilling or refuses to act? The consent of the State Attorney, who is absent or unable to act is not essential to the statutory power of the court to appoint an acting State Attorney; nor does it appear that his protest would in any wise affect the validity of the appointment. His consent is material only when he asks for the appointment of an assistant under section 1355. Again in that same case we said, page 224, "both the statute and the inherent authority of the court furnish ample resources from which to supply a prosecuting representative for the State in any case of emergency." The statute provides the supply when the regular State Attorney is absent or unable to act. Is not the refusal to act a "case of emergency" supplied by the inherent power of the court?

In Miller v. State, 42 Fla. 266, 28 South. Rep. 208, we held in the absence of negating words in the plea, that

the attorney there alleged to have been before the grand jury might have been an assistant to the State Attorney under the statute and therefore might be present during the examination of witnesses and give advice upon points of law but should not be permitted to be present during their deliberations and to request and urge the finding of an indictment. We further said: "At common law the prosecuting officer, or an individual prosecutor, might appear in the secret session of the grand jury and conduct the evidence on the part of the crown (State v. Baker, 33 W. Va. 319, 10 S. E. Rep. 639, and authorities therein cited) but it does not appear that it was the practice for even the prosecuting officer to be present when the vote on the bill is taken. Authorities in this country incline to the view that the prosecuting attorney and his assistant may be present during the examination of witnesses and give legal advice upon points of law, but should retire when the vote is taken, or, if present, should remain silent as to how the jury should vote on the indictment," citing many authorities.

In State ex rel. Ross v. Call, 39 Fla. 504, 22 South. Rep. 748, speaking to the implied powers of the Circuit Courts, we said: "The Circuit Courts being creatures of our constitution, and their course of procedure not being minutely pointed out by the constitution, have implied authority to adopt necessary rules to enable them to exercise their constitutional jurisdiction where the common law, or rules enacted by legislative authority fail to provide a necessary method of procedure; and legislative regulations, when enacted, must not substantially impair the constitutional powers of the court, nor practically defeat their exercise."

In State ex rel. Ellis, Attorney-General, v. Givens, 48

Fla ..., 37 South. Rep. 308, we recognized the power of the Circuit Judge to appoint a clerk to fill a vacancy created by death, only until the Governor might appoint a successor under the regular mode pointed out in the constitution. In that. case we gave effect to both the legislative recognition of the implied power of the court under the constitution and to the general provision in the constitution as to filling vacancies.

In McNealy v. Gregory, 13 Fla. 417, text 435, Judge WESTCOTT, speaking for the court argued: "Courts possess implied and resulting powers from general grants of jurisdiction. Thus, a court invested with criminal jurisdiction, has a resulting and implied power to summon a grand jury, (1 Brock. 159) but they have no inherent jurisdiction (7 Cranch 32)." Would it be denied that a Circuit Court has the power to appoint a temporary substitute to perform the duties of a clerk or sheriff who might in the midst of a trial refuse to act? And yet these officers are also creations of the constitution, removable by the Governor. See also State v. Gleason, 12 Fla. 190-209.

We know of no other decision of this court bearing even remotely upon the subject of implied powers. What say the other courts? Without attempting to quote from all of the many cases we have examined or even to cite them, we shall call attention to a selected few that we think sufficient to sustain the position taken, and to those apparently to the contrary.

In England it was the practice when the crown was unrepresented for the court to appoint counsel to conduct the prosecution. Regina v. Littleton, 9 Car. & P. 671; Queen v. Page, 2 Cox Crim. Cas. 221.

In Commonwealth v. Knapp, 10 Pick. 477, the Supreme Judicial Court of Massachusetts said the appointment of counsel to assist the law officers is one of the incidental powers of the court. In Tesh v. Commonwealth, 4 Dana (Ky.) 522, it is held that even though "no mode has been prescribed for appointing a prosecuting attorney, the court itself, charged with criminal jurisdiction, would have had the inherent power, *ex-officio*, to appoint a fit person to represent the commonwealth, and any person, acting under such authority, would act as legally and effectually as if he had been commissioned by the Governor." The Supreme Court of Texas held in the case of State v. Gonzales, 26 Tex. 197, that the trial court could authorize any competent person to act in the preparation of an indictment, should the district attorney be absent or disabled temporarily, or in any particular case where there might exist special reasons why he should not act," and in State v. Johnson, 12 Texas 231, that admitting the trial court has not the power to fill a vacancy in the office of district attorney or to invest any one with the right to claim the privileges and emoluments of that office, yet it does possess the power in his absence to appoint an attorney to represent the State. In the latter case the argument is as follows: "If another attorney may represent the State upon the trial, why not, with the sanction of the court, in drafting and presenting the bill to the grand jury? It can scarcely be supposed that the judgment, whether of conviction or acquittal would be less effectual, as the basis of an exception, or as a bar to a second prosecution, because the State was represented by an attorney other than the legally elected and qualified District Attorney. There is and can be no good reason

6 S C

why the State or the accused should be denied a hearing or trial, because of the mere absence of the District At- torney, when an attorney, whom the court shall approve as a competent and suitable person, will undertake, un- der such obligations as the court may prescribe, and un- der its authority and supervision, to represent the State, being amenable and responsible to the court for the faith- ful performance of the trust reposed. The District At- torney is not only an officer of the State, but also, in common with other attorneys, an officer of the court. The former is not less subject, in the discharge of his ordinary official duties, to the authority of the court than the lat- ter. And any dereliction of official or professional duty in bringing a case before the court, or in its conduct when there, would be equally the subject of animadversion by the court. It seems that in Tennessee it has been held to be essential to the validity of an indictment, that it be preferred by the proper officer of the State. (Wharton's Am. Crim. Law, p. 122, n.) We have not access to the reported cases in which this is said to have been decided; but we have access to an early statute of that State which might well warrant the decision.

It may be supposed that the interests of the public might suffer, or that the State might sustain an injury by not being represented by its proper law officer. But it is not easy to perceive how the rights of the accused could be thereby prejudiced; or why it should be held to affect the validity of an indictment duly found and pre- sented in court, by a competent grand jury. Nor, indeed, is it perceived on what principle the right can be denied the grand jury, under our law, to find and prefer an in- dictment in a proper case, without the co-operation of the District Attorney. He may enter a *nolle prosequi;* but if

he should think proper to prosecute on behalf of the State, it is not perceived what interest the accused could have in the question whether the indictment was drafted and presented to the grand jury by him, or was drafted by one of their number. But it is not necessary in the present case to inquire into their authority in that respect.

We are of opinion that the fact that, in the temporary absence of the District Attorney, the State was, by the authority of the court, represented by another attorney, in drafting and presenting to the grand jury the bill, was not a ground for quashing the indictment, and that the judgment be reversed and the cause remanded for further proceedings."

In Dukes v. State, 11 Ind. 557, S. C. 71 Am. Dec. 370, the court says: "We think the court possesses an inherent power to appoint one of the attorneys of the court, when necessary to prevent a failure of justice, to conduct the prosecution of a criminal;" and Mitchell v. State, 22 Ga. 211, S. C. 68 Am. Dec. 493, is to the same effect. In Iowa the power to appoint is placed in the categories of implied powers, along with the power to punish for contempt or to appoint ministerial or police officers, State v. Tyler, 122 Iowa 125, 97 N. W. Rep. 983, and cases cited. In the case of the People ex rel. Lindsley, District Attorney v. District Court of Second Judicial District, and Johnson as Judge, 29 Colo. 5, ... Pac. Rep. ..., it was held in the absence of statutory authority and over the objection of the district attorney the trial court is in duty bound to appoint a special prosecutor when it has reason to believe that there are crimes to be investigated in which the district attorney is involved or that his connection therewith is such that it should be investi-

gated. See, also, Roberts v. People, 11 Colo. 213, 17 Pac. Rep. 637, and Board of County Commissioners of Hinsdale County v. Crump, 18 Colo. App. 59, 70 Pac. Rep. 159. The power is recognized in Montana, State v. Whitworth, 26 Mont. 107, 66 Pac. Rep. 748, Territory v. Harding, 6 Mont. 323, 12 Pac. Rep. 750, in North Dakota, State ex rel. Clyde v. Lauder, 11 N. D. 136, 90 N. W. Rep. 564 (where State Attorney refused to prosecute), in Idaho, State v. Corcoran, 7 Idaho 220, 61 Pac. Rep. 1034, and in Kansas, State v. Nield, 4 Kan. App. 626. See, also, United States v. Hill, 1 Brock. 156, S. C. 26 Fed. Cas. No. 15,364, per Chief-Justice Marshall, and United States v. Cobban, 127 Fed. Rep. 714, as also 12 Cyc. 531.

In State v. Heaton, 21 Wash. 59, 56 Pac. Rep. 843, the Supreme Court recognized in terms the implied power of the trial court to appoint counsel, but held that under their statute the power could not be exercised where the regular State representative was present and able and willing to perform the duties of the office. It seems that in that case the legislature had made ample provision to meet the contingency and when that is done, as we have heretofore indicated there is no place for an implied power. The same considerations apply to the cases cited from Michigan.

We have not before us, as did the Texas court quoted above, the Tennessee statutes, so as to be able to say as did that court that the statute controlled the Tennessee decisions, but it appears from Pippin v. State, 2 Sneed's (Tenn.) 43, that the same constitution that created the court also provided the conditions under which it might appoint counsel for the State, and the construction of expressio unius, etc., was applied.

The Supreme Court of Oklahoma held in Mahaffey v.

Territory, 11 Okla. 213, 66 Pac. Rep. 342, that the district court had no authority to appoint an assistant to the county attorney, because of the inexperience of the latter. The statute provided for appointment by the court where the office was vacant, or the attorney absent or unable to attend to his duties, and farther that the Governor might request the Attorney-General to prosecute or defend in any civil or criminal cause in which the territory may be a party or interested. The appointment was a general one "to act in all matters before the court in the capacity of county attorney and public prosecutor in said county." The Supreme Court construed the words "unable to attend to his duties" to mean some mental or physical incapacity to perform his duties, and not lack of experience or incapacity to conduct the prosecution properly. We have no fault to find with this decision.

Durr v. State, 53 Miss. 425, was decided in 1876. The opinion is short and apparently the reversal was upon another ground; the court while saying that the permission given to "the attorney who had been employed to assist in the prosecution, to go before the grand jury with witnesses, and there act for the district attorney in framing the indictment, was improper" yet refused to quash the indictment and reversing the judgment for error as to the petit jury awarded a new trial. This case is referred to in later decisions as authority to the proposition that an indictment will be set aside where an attorney representing private interests appears before the grand jurors and urges them to action, just as we held in the Miller case *supra*.

II. The third plea is also defective. It was argued before us as a case of false personation but we find no such allegation in the plea. It does not aver that J. P.

Billingsley falsely impersonated J. A. Billingsley, nor that he fraudulently procured himself to be placed upon the grand jury, nor is it alleged that he was not known under the name of one of those who served on that jury. The plea as framed construed as it must be most strictly against the pleader, presents simply a case of misnomer. Rampey v. State, 83 Ala. 31, 3 South. Rep. 593.

III. The special replication to the second plea put in issue the sole material issue raised by the plea, that of counseling, requesting and urging the grand jury to find the indictment. What we have said in the discussion of the first plea, makes what remains of the second plea immaterial.

IV. The plaintiff in error again contends most strenuously that the court erred in rejecting testimony proffered in support of the issue raised by the second plea. The Attorney-General insists that in the absence of a special bill of exceptions made up and authenticated at the trial of the plea in abatement, we are precluded from passing on this testimony. Both trials were at the same term of the court and while nothing in our practice prohibits the settling bills of exceptions taken to the points as they arise, it is more usual and entirely proper to present all the exceptions in one bill, as was done in this case.

It was sought to prove by the State Attorney, who signed the indictment that he procured B. S. Liddon at the Fall term, 1902, to be his assistant in the matter of the alleged assault by Taylor upon W. B. Lamar, but that he had not authorized him since and that all the acts done by said Liddon was without the authority and over the objection of said State Attorney. Without determining whether a State Attorney may be permitted to impeach an indictment, which he has signed, it is clear that the

testimony sought to be elicited had no bearing upon the real issue here. It might tend to prove the issues sought to be raised by the first plea, but that plea had disappeared and it is moreover a question whether the proffered testimony did not rather tend to prove the State's case, in showing an unrevoked authorization by the State Attorney. See State v. Smith, La. Ann. ...., 31 South. 693.

The same remarks might be applied to the next assignment of error. The defense offered to have the foreman of the grand jury that found the indictment, read the following paper: "As the District Attorney had presented to the grand jury the point that Judge Liddon is no longer his assistant, and as such had no right to appear before this jury in the case of Lamar vs. Taylor, we, the jury, respectfully desire to be instructed by the court on this point. A. C. Spiller, Foreman," and further asked if the paper was presented by him to the court in the presence of the grand jury. The court properly sustained objections to both the reading of the paper and the answering of the question, in that they were both outside the real issues involved. He was further asked the several questions if the State Attorney appeared before them, and if Mr. Liddon appeared before them and advised them upon questions of law at the investigation. These questions were wholly immaterial, as shown under our discussion of the first plea. The witness was further asked to state whether or not the State Attorney was requested by the grand jury to appear before them to advise them upon points of law, and if so did he so appear and if not why not? An objection was sustained upon the ground, among others, that the question was vague and leading. The question is involved to say the least, and no error was committed in sustaining the objection.

The foreman was next asked "Now if Mr. B. S. Liddon appeared before the grand jury, state whether or not the State Attorney objected to said B. S. Liddon appearing before the grand jury to prosecute the case?" The question was objectionable on the ground interposed thereto, as argumentative and hypothetical, and moreover was not pertinent to the issue.

He was asked "State whether or not the indictment in this case was ignored, and afterwards, without further testimony this indictment was found?" In Mercer v. State, 40 Fla. 216, 24 South. Rep. 154, we decided that for the purpose of quashing an indictment, the court will never inquire into the character of. the evidence which influenced the grand jury, and the principle there announced is conclusive against the evidence sought to be evoked by this question. This question being improper it was not error to refuse questions hypothesized upon the existence of the supposed facts therein inquired of, as for example "If this bill was ignored and afterwards reconsidered and found by the grand jury without additional testimony, state whether or not said B. S. Liddon appeared before the said grand jury advising, counseling and urging the finding of the bill, upon the testimony before the grand jury?" Under an error assigned upon the refusal to permit such a question it is argued that the court refused all avenues that might be opened to the defendant to prove the issues raised by his plea. Without committing ourselves to the proposition that the rule, obtaining in this State, that a petit juror will not be heard to impeach his verdict, extends equally and alike to grand jurors, we fail to find one question, otherwise unobjectionable, that sought to elicit from this grand juror whether Mr. Liddon urged or advised or counseled

the finding of an indictment. No other grand juror was offered as a witness. The question was put to Mr. Liddon on the stand and he answered it categorically in the negative.

Without setting out in detail the other questions it may be said generally that they went to the wholly immaterial points set out in the overruled first plea as to the framing the indictment by Mr. Liddon, his presence in the grand jury room during the examination of witnesses and the non-presence of the State Attorney.

For cases holding that grand jurors are not permitted under the circumstances to impeach their indictment see King v. Marsh, 1 N. & P. 187; Hooker v. State, 98 Md. 145, 56 Atl. Rep. 390; State v. Johnson, 115 Mo. 480, 22 S. W. Rep. 463; Turner v. State, 57 Ga. 107; Simms v. State, 60 Ga. 145; State v. Beebe, 17 Minn. 241; People v. Hulbut, 4 Denio 133, S. C. 47 Am. Dec. 244; State v. Davis, 41 Iowa 311; People v. Thompson, 122 Mich. 411, 81 N. W. Rep. 344; Ex Parte Sontag, 64 Cal. 525, 2 Pac. Rep. 402; State v. Hamilton, 13 Nev. 386; State v. Fasset, 16 Conn. 457; Gitchell v. People, 45 Ill. App. 116, 146 Ill. 175, 33 N. E. Rep. 757; State v. Oxford, 30 Texas 428; Hall v. State, 134 Ala. 90, 32 South. Rep. 750; Wharton's Crim. Pl. & Pr. (9th ed.) section 379; 17 A. & E. Ency. Law (2nd ed.) 1295; 1 Bish. New Crim. Proc. section 858; 4 Wigmore on Evidence, section 2364c.

But two assignments are argued on the trial of the plea "not guilty."

One Blanchard, a witness, testified he was familiar with canes or sticks, and that the one presented to him was composed of sole leather washers built over a steel rod, and varnished on the outside to make it resist water, with a copper head and was asked "Is that stick one that

is likely to produce death at the hands of an enraged
man?" and answered "Rightly used in the hands of a
powerful man it might prove a deadly weapon. It de-
pends on how the man stands and how hard he strikes."
The question was objected to on the ground that the jury
were as capable of deciding as the witness. There is.
some conflict in the authorities as to whether the question
is permissible, but we think it clear that the answer
given was under the circumstances wholly harmless,
especially as it was shown that the defendant used a
loaded pistol as well as the stick. However this may be
and however pertinent the question might be if the ac-
cused had been convicted of an aggrevated assault, in the
commission of which a deadly instrument is essential, it
is not so material on a conviction of assault with intent
to commit manslaughter. We have repeatedly held that
to constitute such a crime it is not necessary that the
assault be made with a deadly weapon. Gray v. State,
44 Fla. 436, 33 South. Rep. 295; Drummer v. State, 45
Fla. 17, 33 South. Rep. 1008; McDonald v. State 46
Fla. 149, 35 South. Rep. 72. The witness was subjected
to a rigorous cross-examination and appears to have been
guarded in all his answers both on the direct and on the
cross. The stick was before the jury, to be passed upon
by them, and the answer being what the law would imply
we can not say that error was committed. It had there-
fore been shown that the stick weighed eleven and three
quarter ounces. See Navarro v. State, 24 Tex. App. 378,
6 S. W. Rep. 542; Ashton v. State, 31 Tex. Crim. Rep.
479, 21 S. W. Rep. 47; Cornish v. Territory, 3 Wyoming
95, 3 Pac. Rep. 793. There was likewise no error in per-
mitting the witness under the circumstances to testify
as to the material of which the stick in evidence was com-
posed.

There remains but the assignment based upon the sufficiency of the evidence to support the verdict. It would serve no useful purpose to set forth the evidence. It has been carefully examined by us and is deemed sufficient.

It follows that the judgment of the Circuit Court should be affirmed at the cost of the plaintiff in error and it is so ordered.

CARTER and SHACKLEFORD, JJ., concur.

WHITFIELD, C. J., being disqualified, took no part in the consideration of this case.

TAYLOR, J., dissenting.

I am wholly unable to agree to the conclusions reached in this case by the majority of the court, and will state my grounds of dissent as briefly as I can.

1st. In order to uphold the ruling of the Circuit Judge in sustaining the State's demurrer to the defendant's first plea in abatement, the majority opinion wholly ignores and overrides the well settled rule prevailing here as everywhere to the effect that "the general presumption is that public officers perform their official duty." Dupius v. Thompson, 16 Fla. 69; 22 Am. & Eng. Ency. Law (2nd ed.) p. 1267, and numerous English and American cases there cited in note 24. The opinion in effect says that we will, in the absence from the record of a word or hint to that effect, indulge the presumption that the State Attorney (a constitutional State officer) though present in court and able to perform the duties of his office, was yet *unwilling* to perform such official duty, and because of such *presumed unwillingness* the Circuit Judge did the proper thing in sending an outside attorney before the grand jury to procure this indictment; and that because

the defendant's first plea in abatement, complaininig of this action of the judge, did not expressly negative this *presumption* that the State Attorney was derelict in the discharge of his official duty, it was, therefore, demurrable. In other words, the majority opinion *presumes* in *favor* of one public officer (the judge) that he has rightly performed his official duty, by indulging the presumption, *against* another constitutional public officer (the State Attorney), that he has been derelict in the discharge of his official duty. The rule is that "the presumption that one officer has performed his duty can not be invoked for the purpose of putting another officer in default, as the presumption of the performance of official duty applies equally in favor of each." 22 Am. & Eng. Ency. Law (2nd ed.) p. 1270. Or, as the same rule is expressed by Judge COOLEY in Weimer v. Bunbury, 30 Mich. 201: "It is not admissible to assume that one officer is in default, upon the mere presumption on behalf of another, that the latter has performed his official duty, but the presumption applies with like force in favor of each." Supervisors of Houghton County v. Rees, 34 Mich. 418; Gibson v. Martin, 7 Humph. (Tenn.) 127. The *presumed unwillingness* of the State Attorney to perform his official duty was not under the allegations of this first plea, and in the absence of any allegation to that effect, a *"supposable special an swer"* to the case made by such plea, that was necessary to be anticipated and obviated by such plea, because when a public officer is present on the scene of his official duty and able to discharge it, as this plea alleges was the case here, the *law affirmatively supposes* or *presumes* that he will discharge it, and in the absence of any allegation to the contrary such legal supposition or presumption prevails, until the contrary is shown. The absence of the

State Attorney from the grand jury room can not give rise to any *presumption* that he was *unwilling* to attend to his duties before them, for the reason that section 1345 of the Revised Statutes makes it his duty to attend upon the grand jury *only when that body may require* such attendance; and there is not a word in the record that even tends to show that the grand jury requested his attendance on this occasion, or that he failed or refused or was unwilling to comply with any such request. But again, even if the State Attorney was unwilling to·prosecute the case, or to urge upon the grand jury the finding of an indictment therein, I do not think that fact would clothe the judge with authority to supersede him, and to *suspend* him from his office by sending an outsider before the grand jury to perform there his official functions and duties.    And why? Because under our laws it is no more the business of the judge to prosecute criminal cases than it is to *prosecute* civil ones. His sphere of duty is to adjudge and administer the law impartially as between all parties before him, leaving the *conduct* of causes, civil and criminal, in the hands of those whose duty it is by law to conduct them.    Our organic law has created the office of public prosecutor in the official person of the State Attorney, and to him our statutes have, exclusively, delegated the official duty to *prosecute* on behalf of the State all criminal causes.    The official duty and responsibility of such *prosecution* rests upon him and not upon the judge; and he, not the judge, has the exclusive control thereof.    If he sees proper to forego the prosecution of any criminal charge, or to enter a *nolle prosequi* therein, it is his official privilege so to do, and the responsibility therefor, if any, is upon him, and not upon the judge. In England, where the Attorney-General of the realm is the

only public official at all corresponding to our American State Attorneys, it is held that he, when in his discretion he assumes the prosecution of a criminal case has the power to enter a *nolle prosequi* without calling upon the private prosecutor to show cause why that should not be done; and that where he has done so the court can not interfere. Queen *ex rel.* Gregory v. Allen, 1 Best & Smith (101 E. C. L.) 850. Such is the common law of England, and in the absence of any statute to the contrary in this State, I am of the opinion that it is the law here by the express provision of section 59 Revised Statutes of Florida, adopting the common and statute laws of England down to July 4th, 1776, where they are not inconsistent with our constitution and laws. Our statutes give to the State Attorneys the exclusive management and control of criminal prosecutions, and there is no limitation anywhere upon such control; and I am of the opinion that they have the power, without the judge's consent, to enter a *nolle prosequi* in any criminal case. And should the State Attorney do so, it would be the most decided form of giving expression to his *unwillingness* to prosecute. People *ex rel.* Attorney-General v. District Court of Lake County, 23 Colo. 466, 48 Pac. Rep. 500. In this case, the court, construing a statute substantially like ours with reference to the appointment of an acting State Attorney when that official is absent, says: "The statute, we think, is not broad enough to permit the court to appoint a district attorney to prosecute in criminal cases where that officer is present in the court room and is not disqualified." Note 9, 23 Am. & Eng. Ency. Law (2nd ed.) p. 276, citing numerous cases from the Federal courts and from the States of Alabama, Colorado, Connecticut, Massachusetts, Mississippi, New Hampshire, New York and Penn-

sylvania. And even though he should decline to prose-cute any criminal cause, or should enter a *nolle prosequi* therein, wilfully and corruptly, I do not think even such action on his part would give to the judge any authority to supersede him, or to suspend him from the discharge of his official functions. If he should be wilfully neg-ligent or corrupt in the discharge of his official duties the power of *suspension* is expressly and *exclusively* lodged in the Governor by the provisions of section 15, Article 4 of our constitution.

The defendant's first plea in abatement sets up what, in my judgment, is tantamount to a *suspension* of the State Attorney from his office by the judge. The Supreme Court of Louisiana in the case of State *ex rel.* Vaughan v. Richmond, 29 La. Ann. 705, text 706, defines a suspen-sion from office to be: "An interruption in the exercise of the officer's duties, of his authority." In the case of *Ex parte* Diggs, 52 Ala. 381, it is defined as being: "A depri-vation of office, for the time." In the case of City of Little Rock v. Parish, 36 Ark. 166, text 174, the word *suspend* is defined as follows: "to cause to cease for a time; to hin-der from proceeding; to interrupt; to delay; to stay." McAuley's Appeal, 77 Pa. St., 397, text 418. The *time* during which the suspension continues is immaterial in determining whether it is a suspension or not. It is equally a suspension from office when the officer is inter-rupted in the discharge of his official functions for one hour, as when such interruption shall continue for six months. In the case of State *ex rel.* Attorney General v. Johnson, 30 Fla. 433, 11 South. Rep. 845, S. C. 18 L. R. A. 410, this court has expressly held that: "The Governor has power, under section 15 of the executive article of the constitution, when acting within the authority there con-

ferred, to hear and decide as to the existence of any alleged neglect of duty in office as a ground for suspending an officer. This authority, whether judicial or administrative in its nature, is vested by the constitution in the Governor as a member of the executive department, and does not appertain to, and can not be exercised by the courts." It must be borne in mind that the defendant's first plea alleges *affirmatively* that the State Attorney was personally present in court, and not unable from any cause to discharge his official duties, and that the judge, *over his objection* and *against his consent,* permitted the outside attorney to go before the grand jury, and there to usurp, while the State Attorney was not present, the official duties of the State Attorney. If this was not a *suspension* of the State Attorney from his office for the time being, it is difficult for me to imagine a case of suspension or temporary interruption in office. The majority opinion, after *presuming* dereliction in the discharge of official duty by the State Attorney in the absence of any allegation to that effect, proceeds to sustain by authorities the case predicated upon such *presumption, viz*: "That because the State Attorney was *unwilling* to discharge his official duty, though present and able to do so, the judge substituted in his stead an outside attorney to perform his official duty before the grand jury." Neither the defendant's first plea, nor does the record contain a word that will justify any such presumption. But says the majority opinion, even though this be true, yet because the defendant, in drafting his first plea, failed to indulge this *presumption,* and failed to anticipate that the court would indulge it, and failed to meet and overcome in his plea such oncoming presumption, we will treat the presumption as a fixed and settled fact. To sustain the case

thus predicated upon an unwarranted *presumption* the majority opinion proceeds to cite and quote from a few selected cases of many that have been examined, that it is supposed support the power of the court to depose a constitutional State officer, and, to install in his place an unofficial outsider. I will examine these selected cases *seriatim*, with the preliminary remark that it is natural to suppose that the few cases *selected* from among so many examined were the strongest that could be found and approached more nearly in their facts the case at bar. First come the two cases of Regina v. Littleton, 9 Car. & P. 671, and Queen v. Page, 2 Cox Crim. Cas. 221, cited to support the assertion that in England it was the practice, when the crown was *unrepresented* for the court to appoint counsel to conduct the prosecution. In England there is no complete system whereby the crown or any public department undertakes all prosecutions; and, subject to certain statutory exceptions, it is the right, and in felonies, the *duty*, of any private person to set the criminal law in motion without the interference of the Crown or any officer of the executive. Such private parties, known there as the *prosecutors*, employ privately paid attorneys to prosecute, who prepare the indictments, send them to the grand jury, with the names of witnesses to be examined, &c., and after the indictment is found, such privately employed attorneys conduct the prosecutions before the courts in the name of the sovereign. 10 Ency. Laws of England, 511 *et seq.* Whenever such prosecutors fail to appear in person or by counsel to prosecute an indictment found at their investigation, by divers ancient *statutes*, among them West Q. C. 10, the judge was empowered to appoint some member of the bar to prosecute the case, and to *require* him to prosecute it.

7 S C

3 Black. Com. (by Hammond) p. 38.   This was done in the case of Regina v. Littleton, but it was done, not through any so-called *inherent power* of the court, but by statute.   The same statutes empowered the judges to assign counsel for both the prosecution and defense.   In Regina v. Jones, 9 Car. & P. 401, Queen's Counsel was assigned to *defend* a party without counsel.

In the case of Queen v. Page, 2 Cox. Cr. Cas. 221, the private prosecutor's retained attorney failed to appear for the prosecution, and the judge, presumably acting under the statutes, appointed a prosecutor from among the members of the bar.

The next case cited is the celebrated case of Commonwealth v. Knapp, 10 Pick. (Mass.) 477.   In that case the court did not assume to impose upon the State Attorney an assistant prosecutor against his consent and over his objection, but, *at the request of the Attorney General,* consented to allow Mr. Webster to assist in the prosecution, and were careful to express the fact that the *request* of the Attorney General for Mr. Webster's assistance was *concurred* in by the Solicitor General; and were further careful to express the fact that Mr. Webster was to render such assistance *without compensation.*

The next case cited is Tesh v. Commonwealth, 4 Dana (Ky.) 522.   In that case the defendant was convicted in the city court of the city of Louisville, and on his appeal urged as error that there was no legally appointed prosecuting attorney.   It appears from the opinion that the attorney who prosecuted the case was employed by the mayor and city council for that purpose.   The court in its opinion says: "that there is no such office as that of attorney for the commonwealth for the city court of Louisville, but, says the court, the act establishing the

city court provides that the mayor and council of the city * * * shall have the right to employ a prosecuting attorney for the police court of Louisville, and may allow him such reasonable compensation as may be agreed on, &c. And that such a person so employed is a legal representative of the commonwealth in such city court, and his proper acts in the police court, are as valid and effectual as those of a Circuit Court attorney can be in a Circuit Court. The Kentucky court might well have rested the question here upon the abundant authority given by their statute for the employment by the city of a prosecuting attorney for the city police court, but instead of doing so, it goes on in the opinion and gives utterance to much *obiter dictum* anent the inherent power of courts to appoint prosecuting attorneys, and it is from this *dictum* of the court that the majority opinion quotes. Even in that case the court was careful to confine the appointive power of the court to cases where there was *no* State Attorney, or to cases where that official was *absent.*

The next case cited is State v. Gonzales, 26 Texas 197. In that case the District Attorney, who had been regularly appointed or elected to that office, was subsequently appointed by the Confederate Government to the office of Receiver of Sequestrated property, but continued to perform the duties of District Attorney. The defendant, who was indicted for horse stealing, plead in abatement that the District Attorney, who had appeared before the grand jury and had signed the indictment, could not hold and exercise both offices at the same time, and that his acceptance of the office of Receiver annulled his official character as District Attorney. The trial court quashed the indictment, but on appeal by the State, the Supreme

Court reversed this ruling, deciding that it was not proper in this manner to try the question of the right of any one to discharge the duties pertaining to the office of District Attorney. From the brevity of the opinion in that case and the absence therefrom of a single citation of authority, and from the fact that it was rendered during the pendency of the war between the States, it savors more of the summary utterance of a military court than the solemn deliberation of a court of last resort. From some loose dicta in this case also is quotation made.

The next case cited is State v. Johnson, 12 Texas 231. The facts in that case were that the District Attorney was *absent from the court,* and the judge appointed another attorney present to represent the State as District Attorney *pro tem.* The indictment was signed by such acting District Attorney. The defendant plead these facts in abatement of the indictment, and the trial court sustained the plea and quashed the indictment. On appeal to the Supreme Court this ruling was reversed, the court holding that *in the absence of the District Attorney* the trial court has the power to appoint an attorney to represent the State temporarily. From this case remarks by the court, purely *arguendo,* are lengthily quoted in the majority opinion, but I fail to see anything in the case that at all supports the doctrine that a trial judge can supersede a regularly qualified State Attorney who is present and not unable from any cause to perform his official duties, by putting an unofficial outsider in his official shoes to perform them, and that, too, against his consent and over his objection.

The next case relied upon and cited in the majority opinion is Dukes v. State, 11 Ind. 557, also reported in 71 Am. Dec. 370. The facts in that case were as follows:

The regularly elected prosecuting attorney *failed to attend court,* whereupon the judge, acting under the provisions .of section 5, page 386 of Vol. 2 of the Revised Statutes of Indiana, appointed one attorney to act for the term as acting State Attorney. The attorney so appointed, being employed· by the prisoner in that case for. his defense, could not prosecute, upon which the judge appointed another attorney to prosecute in that particular case. The latter attorney signed the indictment, and conducted the prosecution. The point was raised that he was illegally appointed. The above mentioned statute of Indiana, under which .the appointment was made reads as follows: "If any prosecuting or district attorney fail to attend any court of his circuit or district, as the case may be, the judge of such circuit or district, shall appoint some person to prosecute for such term who shall receive the docket fees of such term." &c. The court might well have rested its decision ·upon the authority of this statute, but proceeds to indulge in *obiter dictum* to the effect that courts have inherent power to appoint a prosecuting attorney when necessary to prevent a failure of justice. Again this dictum of the court is relied upon to sustain the majority opinion, when the case in which it found utterance was one where the State Attorney *was absent* and the judge, acting under the abundant authority of the statute, appointed an acting State Attorney in his stead.

The next case relied upon is Mitchell v. State, 22 Ga. 211, S. C. 68 Am. Dec. 493. The facts in that case were that the solicitor general was *unable from sickness* to perform his duties, whereupon the court appointed another attorney to officiate in his place. The court held in that case in effect that .the statute of. Georgia authorized it. There is nothing in this case that sustains the

authority of the judge to supersede an official who is in all respects able to attend to his official duties.

The next case cited is State v. Tyler, 122 Iowa 125, ... N. W. Rep..... In that case the county attorney *requested* the court to appoint an assistant to aid him in the prosecution, which was done. The Iowa statute, like ours, authorized the county attorney, with the approval of the court, to appoint an assistant.

The next case cited is People *ex rel.* Lindsley v. District Court of Second Judicial District, 29 Colo. 5, ... Pac. Rep. .... In that case the judge, having been informed that the State Attorney was *implicated* in the commission of some crime, ordered a grand jury to investigate it and appointed a disinterested attorney to represent the State in such investigation. The District Attorney instituted proceedings in the nature of prohibition to restrain the judge from thus superseding him. As I understand the decision, the court justifies this action of the trial judge upon the following statute of that State: "If the district attorney is interested, or shall have been employed as counsel in a case, the court having criminal jurisdiction may appoint some other person to prosecute or defend such cause." I see nothing in this case that sustains the authority of a trial judge to appoint an acting State Attorney or an assistant State Attorney against the consent and over the objection of a State Attorney who is present and not disqualified from any cause to perform his official duties.

The next case selected and cited is Roberts v. People, 11 Colo. 213, 17 Pac. Rep. 637. In that case the District Attorney *asked the court to excuse him* from further service therein upon the ground that he had been retained in another cause the facts in which were so interwoven

with the facts in that case that he felt that it would be improper for him to prosecute it. The court granted his application and appointed another attorney to prosecute the case as special District Attorney. This action of the court was sustained upon statutes of the State of Colorado. The inapplicability of this case to the case under consideration is apparent.

The next case selected and cited is Board of County Commissioners of Hindale County v. Crump, 18 Colo. App. 59, ... Pac. Rep. .... This was a civil case in which the facts were that the district attorney *requested the court* to appoint an assistant to aid him in the prosecution of a criminal cause, the court did so, and at the conclusion of the trial the court made an order that the county pay such assistant for his services the sum of $200. On refusal of the county to pay this sum the appointee of the judge sued the county therefor. Much is said in this case as to the so-called *inherent* power of the court to appoint prosecutors, but the facts of the case are radically different from the one at bar.

The next case selected and cited is State v. Whitworth, 26 Mont. 107, ... Pac. Rep. .... The facts in that case were as follows: The county prosecuting attorney made an affidavit showing that he was *physically unable* to assume the entire burden of the prosecution and *requested the court* to appoint two other attorneys to assist him. The court, being first careful to find that the Attorney General of the State was absent from the county, and could not, therefore, aid in the prosecution, granted the motion of the County Attorney and appointed the two assistants *as requested*. This case falls far short of being authority for the appointment by the judge of an assistant prosecuting attorney *over the objection* and *against*

the consent of the regular official prosecutor who is present and not unable from any cause to act.

The next case selected and cited is that of Territory v. Harding, 6 Mont. 323, 12 Pac. Rep. 750. In that case both the District Attorney and his deputy were *absent from the court and from the county,* whereupon the court appointed an attorney to represent the Territory in the prosecution of the case, both before the grand jury and the court. The inapplicability of this case to the effects of the case at bar is apparent.

The next case cited is State *ex rel.* Clyde v. Lauder, 11 N. Dak. 136, ... N. W. Rep. .... In that case the State Attorney instituted certiorari proceedings in the Supreme Court of the State against the District Judge to review and annul an order made by the judge in a criminal case deposing the State Attorney from the prosecution thereof and appointing another attorney to prosecute it, and deducting $100 from the salary of the State Attorney to pay such other attorney for his services. The Supreme Court held that *under their statute* it was *optional with the court* to direct either the State Attorney or *another attorney appointed by the court* to file an information and bring the case to trial, and, therefore, sustained *that part* of the judge's order appointing another attorney to prosecute the case, though the State Attorney was present and able to act, but *reversed* and *annulled* that part of the judge's order requiring a *deduction* from the salary of the State Attorney to be paid to such appointee, upon the ground that their statute only authorized such *deduction* in cases where the State Attorney was absent or unable to attend to his duties. That such statutes should be strictly construed. And that because the State Attorney was neither *absent* nor *unable* to perform his duties

the judge had no authority to deplete his salary. In Florida we have no such statute as the one in North Dakota, making it *optional* with the judge to either direct the State Attorney to prosecute a criminal case or *to appoint another attorney* to prosecute it, even though the State Attorney is present and able to act. And if our legislature should see proper to borrow such a statute from Dakota or elsewhere, I am decidedly of the opinion that it would be unconstitutional and void; and why? Because the delegation of such power to a Circuit Judge would be to clothe him with the power to *suspend* from office another constitutional officer, when, under our constitution, such power of *suspension* is lodged *exclusively* in the Governor and Senate. When an officer is temporarily stripped of authority to perform any official duty devolving upon him by law, and such duty is delegated to another to be performed in the place and stead of such officer, it is a *suspension* of such officer from his office. The *time* of the duration of such suspension is immaterial.

The next case cited is that of State v. Corcoran, 1 Idaho 220, 61 Pac. Rep. 1034. In that case the County Attorney stated in open court that *he was disqualified from acting as County Attorney,* and that he was *unable to attend to the duties* of said office in matters connected with or growing out of the alleged riots, out of which arose the crime charged. The court, under the provisions of the following statute, appointed another attorney as acting County Attorney. "When there is no County Attorney for the county, or when he is absent from the court, or when he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged, and for which he is to be tried on a criminal

charge, or when he is near of kin to the party to be tried on a criminal charge, or when he is unable to attend to his duties, the district court may, by an order entered in its minutes, stating the cause therefor, appoint some suitable person to perform for the time being or for the trial of such accused person, the duties of such county attorney, and the person so appointed has all the powers of the county attorney, while so acting as such." The inapplicability of this case to the one at bar is apparent.

The next case cited is State v. Neild, 4 Kan. App. 626, 45 Pac. Rep. 623. In that case it appears that the office of county attorney is subject absolutely to the will of the legislature. That the legislature has unlimited control of the subject, and can lodge *the power to appoint them* in whomsoever it pleases. The legislature of Kansas enacted a statute authorizing the Attorney General of the State to appoint an assistant attorney general for any county in which, within his judgment, the county attorney was unable or had neglected or refused to enforce the provisions of the prohibitory liquor law. Under this law the Attorney General had appointed an assistant Attorney General, who prepared and verified the information in that case. The court held that that statute was not violative of any provision of the Kansas constitution, and that the appointment under it by the Attorney General of an assistant Attorney General for such county was authorized thereby; and that the jjudgment of the Attorney General as to the existence of the necessity for the appointment of an assistant Attorney General in any county was final and conclusive. The inapplicability of this case to the one at bar is apparent.

The next case cited is United States v. Hill, 1 Brock, 156, S. C. 26 Fed. Cas. No. 15, 364. In that case no ques-

tion whatever is involved as to the power of any court to appoint prosecuting officers, or assistant prosecutors, or acting prosecutors. Justice MARSHALL held in that case that though no act of Congress had expressly conferred upon the United States courts the right to summon grand juries, that yet since the laws of Congress had invested such courts with criminal jurisdiction, and since this jurisdiction can only be exercised through the instrumentality of grand juries, the power to direct them results by necessary implication. This is all that there is in that case, and its total lack of analogy even to the case at bar is apparent.

The next case cited is United States v. Cobban, 127 Fed. Rep. 713. In that case the Attorney General of the United States, acting under the provisions of Congressional statutes empowering him so to do, appointed an assistant District Attorney, who appeared before the grand jury in their investigation of the cause. The contention was made that such assistants had no authority to appear before grand juries, but the court held that their powers were practically the same as those of the District Attorneys, and that the Attorney General, under the statutes of Congress had the power to appoint them. No question is raised or discussed in the case as to the power of the *courts* to appoint prosecuting attorneys.

The next and last authority cited is 12 Cyc. Law & Proc. 531. The text of this citation is as follows: "If the prosecuting officer is *absent* or *incapacitated* from any cause to conduct the trial, it is the duty of the court and it has the inherent power to appoint a suitable person to discharge his duties, in order to avoid delay and to prevent a miscarriage of justice." I have no fault to find

with this statement of the law. It coincides with our statutes on the same subject, but it falls far short of sustaining the view that a judge can, when the official State Attorney is *present* and *not incapacitated* from any cause to discharge his official duties, appoint an outsider to perform such duties, against that official's consent and over his objections. Neither is there anything in any of the former adjudications of this court that at all sanctions such a doctrine. In the case of King v. State, 43 Fla. 211, 31 South. Rep. 254, the facts were that the State Attorney was *sick and absent* from the court, upon which the judge appointed another attorney as *acting* State Attorney under the provisions of our statute. This court in that case might well have rested the propriety of such appointment upon the undoubted authority of our statute, under which it was made, but *through the writer hereof*, indulged in some *obiter dictum* as to the inherent power of courts to supply prosecuting officers, but even in such *dictum* confined such "inherent power" to cases where the official State Attorney was *absent* or *unable* to act.

In the case of Miller v. State, 42 Fla. 266, 28 South. Rep. 208, the question presented arose over an *assistant* to the State Attorney, *procured* at the *instance* and *request* of such State Attorney. Such *assistant* in that case went before the grand jury, examined witnesses, &c. The record did not show *affirmatively* whether he appeared as an assistant to the State Attorney *with the sanction of the court*, and it was held in that case that in the absence of any showing to the contrary, it would be presumed that he so appeared with the sanction of the court. the record showing that he had been *procured* to assist by the State Attorney. There is nothing in that case that

sanctions the authority of a judge to supersede the State Attorney when not disqualified to act. But on the contrary in that case this court in discussing this statute with reference to the appointment of *assistants* to State Attorneys, says, p. 273: "The provision in reference to assistant counsel before the grand jury found in section 1355, defines their duties and expressly limits their actions, and *the courts should be careful not to extend the rule beyond the policy of the statute.*" In the case of Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938, this court has held, too, in effect that the official State Attorney must control the prosecution from its inception to its close. In the case of State *ex rel.* Ross v. Call, 39 Fla. 504, 22 South. Rep. 748, cited in the majority opinion, there is nothing that bears even remotely upon the questions involved here, and the same is true also of the cases of State *ex rel.* Ellis v. Givins, 48 Fla. ...., 37 South. Rep. 308, and McNealy v. Gregory, 13 Fla. 417, and State *ex rel.* Attorney General v. Gleason, 12 Fla. 190, also cited in the majority opinion.

The first plea of the defendant alleges substantially that while the regularly appointed State Attorney was present in attendance upon the court, and not from any cause unable to perform his official duties, the court, against the consent and over the objections of said State Attorney, permitted another attorney to appear before the grand jury who found the indictment, and to be present with said grand jury during the examination of witnesses on whose testimony the indictment was found, and to advise said grand jury upon legal points relating to the finding of said indictment, and to frame said indictment. The defendant's first plea and the demurrer thereto presents two questions: A. Did the court have authority,

under the circumstances stated in the plea, to permit the
instrusion into the grand jury room of an attorney other
than the State Attorney, against the consent and over
the objections of such State Attorney?   B.   If the court
had no such authority, does such unauthorized presence
and intrusion in the grand jury room of such attorney
and his actions there in connection with the finding of
the indictment present a valid ground for the abatement
of such indictment?   My answer to the first of these ques-
tions is that the judge has no such authority.   Official
public prosecutors were unknown to the common law of
England, but in the American States, that derived the
system from the institutions of the Dutch Republic of
Holland (The Puritans in England, Holland and Amer-
ica, by Douglass Campbell, Vol. 2 pp. 441-465) they are
provided for in the constitutions of some and by statute
in others, and their official duties, powers and responsi-
bilities are prescribed and defined by law.   In Florida,
by section 15 of Article V of its constitution, the Governor,
by and with the consent of the Senate, is required to ap-
point in each judicial circuit a State Attorney, whose
duties shall be prescribed by law, and who shall hold of-
fice for four years.   From the same source, by section 8
of the same article of the organic law, do the Circuit
Judges derive their official creation.   Not being liable to
impeachment under the provisions of section 29 of Article
III of the constitution, State Attorneys, for any malfeas-
ance, misfeasance, neglect of duty in office, for the com-
mission of any felony, or for drunkenness or incompe-
tency, may, by the provisions of section 15 of Article IV
of the constitution, be *suspended* from office by the Gov-
ernor until the adjournment of the next ensuing session
of the Senate, and if the Senate concurs the Governor

may remove them absolutely from office for any of the above stated causes; and by the same section of the constitution the Governor is clothed with the power to fill by appointment any office, the incumbent of which has been suspended.

Under the caption: "The State Attorney—His Powers, Duties and Responsibilities," sections 1344, 1345 and 1346 of our Revised Statutes, provide that, it shall be his duty to appear in the Circuit Court within his judicial circuit, and prosecute or defend on behalf of the State all suits, applications or motions, civil or criminal, in which the State is a party. Whenever required by the grand jury, it shall be his duty to attend them for the purpose of examining witnesses in their presence, or by giving legal advice in any matter before them, and he shall prepare bills of indictment; and it is made his duty to have summoned all witnesses required on behalf of the State; and by section 1350 of the Revised Statutes it is made his duty, within thirty days after the final adjournment of the Circuit Court at each term to make to the Comptroller a full and complete statement and report of all the cases in which the State is a party, which report shall contain the title of the cases, date when commenced, offence charged, and the steps taken in, or disposition made of, each case, at the term; and in case of conviction, the punishment imposed, &c. Thus by law are his official duties and responsibilities clearly defined, fixed and prescribed. How, when and under what circumstances these official duties can, by the Circuit Judge, be imposed upon another than the State Attorney is also definitely, clearly and carefully prescribed and fixed by law.

Section 1354 of the Revised Statutes as amended by Chapter 4899, laws of 1901, provides that: "Whenever

there shall be a vacancy in the office of State Attorney in any of the judicial circuits of this State, either by non-appointment or otherwise, or if a State Attorney shall not be present at any regular or special term of the court, or being present, shall from any cause be unable to perform the duties of his office, the judge of said Circuit Court shall have full power to appoint a prosecuting attorney from among the members of the bar, with the consent of the member so appointed, to whom shall be administered an oath to faithfully discharge the duties of State Attorney, and who shall have as full and complete authority, and whose acts shall be in all respects as valid as a regularly appointed State Attorney. He shall sign all indictments and other documents as "Acting State Attorney." The power of the said appointee shall cease upon the arrival of the State Attorney or the cessation of his inability. The said Acting State Attorney shall receive for his services the sum of ten dollars per day while in attendance on the court which shall be paid out of the appropriation for the payment of State's Attorneys, and deducted from the salary of the State's Attorney for whom he acted." It is a significant fact, highly indicative of the desire of the legislature to guard the official rights and prerogatives of the regularly appointed State's Attorney against judicial interference that in the section of the law just quoted care has been taken to *expressly declare* that: "the power of the said appointee shall cease upon the arrival of the State Attorney or the cessation of his inability." What *power* is it that shall so cease in the *presence* of the regular State Attorney? The power to act in the place and stead of the State Attorney derived from the *judge's act of appointment.* In other words the judge is expressly

stripped of authority *in the presence of the State Attor- ney,* and in the absence of any inability on his part to perform his official duties, to delegate those official du- ties to another. Equally careful and guarded has the legislature been in framing the next section, 1355, of the Revised Statutes making provision for *assistants* to State Attorneys. Its provisions are as follows: "1355. Assistant to State Attorney. The State Attorney, by and with the consent of court, may procure the assistance of any member of the bar when the amount of the State business renders it necessary, either in the grand jury room to advise them upon legal points and framing in- dictments, or in court to prosecute criminals. But such assistant shall not be authorized to sign any indictments or administer any oaths, or to perform any other duty except the giving of legal advice, drawing up of indict- ments, and the prosecuting of criminals in open court. His compensation shall be paid by the State Attorney, and not by the State." This section, dealing as it does with the same subject as the preceding section, 1354, must of course, be construed *in pari materia* with that section. As we have seen, by section 1354 the judge is expressly deprived of authority to delegate to another the power of a State Attorney in the *presence* of a regular State At- torney not disqualified to act. The next section, 1355, above quoted, framed in perfect consistency and harmony with the former, is careful still to guard the rights and prerogatives of the official State Attorney from judicial interference by withholding from the judge the power to impose upon him an unbidden or obnoxious assistant. By this section the *State Attorney,* not the judge, is expressly authorized to procure an assistant. He, not the judge, must be the actor in the procurement of such assistant.

8 S C

It is true that by its provisions the State Attorney in procuring an assistant must obtain the consent of the court, but this is designed as a safeguard to the rights of the public by interposing the check of the judge's consent against an indiscriminate selection by the State Attorney of an unfit or improper assistant. But again the last quoted section provides that assistants to the State Attorney shall be compensated for their services by him and not by the State. To admit that the judge has the power in any case to impose upon the official State Attorney an assistant against his consent is to admit that such power can be extended to all cases, in which event we would be confronted with the spectacle of one constitutional State officer depriving another constitutional State officer of his entire salary, and, against his consent, and without accountability to any one, passing it over to another who is not an officer at all. The law seems to have been carefully framed expressly to guard against any such unique result.

Again if it be admitted that the judge can, while the State Attorney is present and in all respects able to attend to his official duties, depose him and delegate his official powers and duties to another in any individual case, then it is to admit that he can so depose him in all cases as they arise, which would be tantamount to a *suspension* or *removal* of such officer form his office, when as we have seen, the power of suspension and removal is lodged in such a case by the constitution exclusively in the Governor with the consent of the Senate.

In the case of Meister v. People, 31 Mich. 99, Judge CAMPBELL, in construing a statute similar to ours (section 536, p. 248, Vol. 1 Comp. Laws of Mich. Ed. of 1871) empowering the courts to appoint an Acting State Attor-

ney in the absence or inability to act of that officer, which statute, however, is not so carefully guarded as ours, says: "The courts may appoint counsel to act in his place when he ʼis absent or unable to perform his duties, or where the office is vacant; but no other power of appointment is given. Any recognition of other counsel, if valid, can only be by the request of the prosecuting attorney. He can not abdicate his duties, and the court can not divide or relieve them, or give to other counsel any authority whatever, independent of his responsibility." In the same case the same distinguished judge says: "It is impossible to account for the change in our statutes requiring the exclusive control of criminal procedure to be in the hands of public officers who are forbidden to receive pay or in any way become enlisted in the interests of private parties, unless we assume the law to have been designed to secure impartiality, from all persons connected with criminal trials." Commonwealth v. King, 8 Gray (Mass.) 501; State v. Griffin, 87 Mo. 608; Terrell v. Green, 88 Tex. 539, 31 S. W. Rep. 631; Seaton v. Polk County, 59 Iowa 626, 13 N. W. Rep. 725; State v. Bartlett, 55 Me. 200; Chambers v. State, 22 Tenn. (3 Humph.) 237; Commonwealth v. Williams, 2 Cush. (Mass.) 582; Commonwealth v. Knapp, 10 Pick. 477; Comonwealth v. Scott, 123 Mass. 222; Edwards v. State, 47 Miss. 581; Engle v. Chipman, 51 Mich. 524, 16 N. W. Rep. 886. See especially State v. Heston, 21 Wash. 59, Sayles v. Circuit Judge, 82 Mich. 84; Mahaffy v. Territory, 11 Okla. 213.

The general rule with reference to the appointment of court attendants and assistants is that in those cases where the *statute* vests the right to appoint in other than the judge such enactment operates as a limitation

or exclusively. 11 Cyc. of L. & P. 723, citing State v. Smith, 82 Mo. 51; Ex parte Strobach, 49 Ala. 443. My opinion is that under the *express limitations of our statutes,* our Circuit Judges have no authority or power, *when the regular State Attorney is present in attendance upon the court, and not unable or disqualified from any cause to perform his official duties,* to appoint an Assistant State Attorney or an acting State Attorney without the consent and over the objections of such regular State Attorney, and that any person appointed to such position under the circumstances set forth in the defendant's first plea is as devoid of authority to act in the capacity of State Attorney or Assistant State Attorney as is any outside stranger without any semblance of authority at all. And I am of the opinion that to hold otherwise will be to disregard and override the plain provisions of our statute on the subject. The majority opinion seems to take the view that the absence from the statute of authority to the judge to appoint an acting or assistant State Attorney in a case where that official was *"unwilling"* to prosecute a case is a *"casus omissus"* from the statute. I can not think so. And it can not be, else the legislature would not have been so careful to give expression to its will that "the power of the judge's appointee should cease upon the arrival of the State Attorney." And I am of the opinion that in the enactment of these two provisions of the law the legislature was careful to keep within constitutional bounds in its delegation of authority to the judge. By section 15 of Article IV of the constitution, *neglect of duty in office* is expressly declared to be one of the grounds for which the *Governor can suspend* an officer from the discharge of his office. My judgment is that the legislature, in the enactment of these statutes, bore in mind the fact that the *constitution* had thus *exclu-*

*sively* lodged in the Governor the power of *suspension* for *neglect* of *official* duty, and that were they to undertake to delegate such power to the Circuit Judge it would be violative of the organic law, and, therefore, they wisely and purposely abstained from the attempt. Some authorities hold to the doctrine that an indictment being a record can not be averred against, but this doctrine does not obtain here. In Miller v. State, 42 Fla. 266, 28 South. Rep. 208, a plea in abatement of an indictment was sustained on practically the same grounds alleged against the indictment under discussion. Reynolds v. State, 33 Fla. 301, 14 South. Rep. 723, and Florida cases there cited.

Having concluded that the attorney, according to the allegations of the defendant's first plea in abatement, who appeared before the grand jury while they were investigating the case, giving them legal advice, and being present during the examination of witnesses, had, under the circumstances alleged in said plea, no more authority to be there than any other outside stranger, should his appearance and actions before such grand jury in connection with the finding of the indictment as alleged in such plea, abate the same? I think that it should.

By the provisions of our statute, sections 1345 and 2807, it is made one of the official duties of the State Attorney to attend upon the grand jury for the purpose of examining witnesses in its presence, giving it legal advice and to isue process for witnesses and to prepare bills of indictment, and the grand jurors are sworn the counsel of the State to keep secret. No other person is permitted by law to appear before them in such capacity except the official State Attorney or his lawfully constituted substitute. It is one of the safeguards thrown by the law

around the rights of every citizen, that he shall not be subjected to the humiliation of having even a charge of crime preferred against him through any undue, biased or improper influences brought to bear upon the grand jury, that the system was adopted of placing the matter of the skilled examination of witnesses before grand juries and the giving them legal advice, exclusively in the hands of a *State official,* whose services are paid for by the State, thereby insuring *imparatiality* in every step of the State's procedure for the punishment of crime. Durr v. State, 53 Miss. 425; Welch v. State, 68 Miss. 341, 8 South. Rep. 673; United States v. Kilpatrick, 16 Fed. Rep. 765; State v. Bowman, 90 Me. 363, 38 Atl. Rep. 331; Wilson v. State, 70 Miss. 595, 13 South. Rep. 225; Lewis v. Board of Commissioners of Wake County, 74 N. C. 194; State v. Addison, 2 S. C. (N. S.) (2 Rich.) 356; Wharton's Cr. Pl. & Pr., (9th ed.) section 367; Commonwealth v. Dorwart, 7 Luz. Bar. (1 Brightley's Dig. Pa. Rep. section 236, p. 494) 121.

In my judgment the court below erred in sustaining the demurrer of the State to the defendant's first plea in abatement.

I agree with the majority of the court in what is said with reference to the defendant's third plea in abatement. Had such plea properly set up a case of false personation of another by one of the grand jurors who served, it should have abated said indictment. Robert Scarlet's Case, 7 Coke's Rep. 98; 2 Hawk P. C. p. 300, section 28; Kitrol v. State, 9 Fla. 9; 5 Bacon's Abr. 312; Nixon v. State, 68 Ala. 535; McGill v. State, 34 Ohio St. 228; State v. Cantrell, 21 Ark. 127; State v. Clough, 49 Me. 573.

Upon the defendant's second plea in abatement the

State joined issue and upon this issue a trial was had before a special jury. Upon this trial to maintain his plea the defendant offered to prove the allegations of the plea by the State Attorney and by a member of the grand jury that returned the indictment, but the State objected to such witnesses testifying upon the ground that one of them was the State Attorney who had signed the indictment as such, and he was estopped by such signature from invalidating his own official act, and as to the others being members of the grand jury they could not testify to transactions before the grand jury to invalidate an indictment, all of which objections were sustained by the court, and the court refused to let said proffered witnesses testify, to which rulings exceptions were duly taken, and they are assigned as error.

I think the court below erred in its exclusion of all of this proffered evidence. The plea of the defendant to which it was addressed was a good plea, and if established by proofs should abate the indictment. See authorities *supra*.

The only express prohibition placed upon grand jurors testifying to transactions occurring in their body by our statute, section 2813 Revised Statutes, is that they shall not be allowed in any court to testify in what manner he or any other member of the jury voted on any question before them, or as to what opinion was expressed by any juror in relation to such question. Section 2814 of the Revised Statutes provides that: "Members of the grand jury may be required by any court to testify whether the testimony of a witness examined before such jury is consistent with or different from the evidence given by such witness before such court; and they may also be required to disclose the testimony given before them by any

person, upon a complaint against such person for perjury, or upon his trial for such offence." Construing these two sections of our law, in the case of Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182, this court has said: "By section 2813 R. S., as well as by public policy, a grand juror should not be permitted to state or testify in any court in what manner he or any other member of the grand jury voted on any question before them, or what opinion was expressed by any juror in relation to such question, and to this extent the secrecy of the grand jury room is absolute, but neither by statute nor public policy is the sanctity of the grand jury room carried further than the restriction embodied in section 2813, and a member of a grand jury may be required by the court, *when public justice demands it,* to testify to any fact, otherwise competent, which does not violate the restriction stated. The express provision in section 2814 as to the cases in which a grand juror may be required to testify does not exclude an inquiry into other cases sanctioned by law." In the same case it is also held in effect that wherever it is proper for a grand juror to testify to transactions occurring in the grand jury room the State Attorney can properly testify to such matters if within his knowledge. The matters sought to be proved by the State Attorney and by the members of the grand jury in this case and excluded by the court were none of them violative of the express prohibitions of section 2813 Rev. Stats., and were all of them, I think, proper matters of enquiry upon said plea in abatement, and were competent to be testified about by the State Attorney and by members of the grand jury. State v. Benner, 64 Me. 267; State v. Grady, 84 Mo. 220; State v. Horton, 63 N. C. 595; State v. Will, 97 Iowa 58, 65 N. W. Rep. 1010; Commonwealth v. Green, 126 Pa. St.,

531, 17 Atl. Rep. 878; Commonwealth v. Hill, 11 Cush. 137; People v. Briggs, 60 How. Prac. (N. Y.) 17; Gordon v. Commonwealth, 92 Pa. St., 216, S. C. 37 Am. Rep. 672; State v. Broughton, 7 Iredell Law (N. C.) 96; United States v. Farrington, 5 Fed. Rep. 343; State v. VanBuskirk, 59 Ind. 384; Burkick v. Hunt, 43 Ind. 381; Burnham v. Hatfield, 5 Blackf. (Ind.) 21 Huidekoper v. Cotton, 3 Watts (Pa.) 56; Low's Case, 4 Greenlf. (Me.) 439; Jones v. Turpin, 6 Heisk. 181; Territory v. Hart, 7 Mont. 42, 14 Pac. Rep. 768; State v. Moran, 15 Ore. 262, 14 Pac. Rep. 419; United States v. Kilpatrick, 4 Crim. Law Mag. 692; Ex parte Sontag, 5 Crim. Law Mag. 384.

This court has, as before seen, in numerous cases committed itself to the doctrine that assaults upon indictments upon grounds such as are alleged here are the proper subjects for pleas in abatement. If so, then when such a plea is filed the *"demands of justice"* would require a proper investigation as to the *truth* of its allegations. The occurrences and transactions before grand juries are *presumed* to be known to that body and its authorized attendants *alone;* if members of its body are not permitted to testify to happenings before them, simply because it might tend to impugn an indictment by them found, then we would be confronted with the legal solecism of saying that it is proper to *allege* against such indictment facts that if *proven* would vitiate it, but though you can rightfully *allege,* yet you can not *prove* such allegata from the *only source* from which such proof can come. The law is not guilty of such absurdities. Upon this question of permitting grand jurors and State Attorneys to testify as to happenings in the grand jury room, the decisions are greatly conflicting. To what extent this conflict owes its existence to the

differences in the oath administered to grand juries in different jurisdictions it is difficult to tell. But that there are material differences in the form of the oath prescribed in different jurisdictions there can be no dispute—and it is fair to assume that the legislature in making these changes and departures from the old English common law oath to grand juries, intended to accomplish something by such changes and departures. Thus the English common law oath on the subject of *secrecy* was: "The King's counsel, your fellows and your own you shall keep secret." 1 Bish. New Crim. Proc. section 856. In many of the American States a similar oath of absolute and unqualified secrecy is imposed, among them Maine, New Hampshire, Massachusetts, Connecticut, Colorado, Alabama and perhaps others. In Florida, however, the oath prescribed does not bind the grand jury to absolute and unqualified secrecy. It reads: "The counsel of the State of Florida, your fellows and your own you shall keep secret, *unless required to disclose the same by some competent court."* Rev. Stats. of 1892, section 2808. The italicised words are a complete qualification of the common law oath of absolute secrecy, and can not be held to be meaningless. This court in Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182, repudiates the ancient doctrine that public policy requires absolute silence as to proceedings in the grand jury room, and has committed itself to the modern, more liberal, and far more reasonable rule prevailing in Massachusetts and other States as announced in Commonwealth v. Hill, 11 Cush. 137, a rule which certainly accords with the spirit and language of the oath of grand jurors prescribed by our statute, and that is best adapted to the administration of justice in our courts. This more liberal rule meets

with the approval of the most enlightened modern text writers. 3 Rice on Ev. section 255; Wigmore on Ev. sections 2352-2353-2364.

I am of the opinion that for the two errors herein discussed the judgment should be reversed.

I concur fully in the conclusion of the foregoing dissenting opinion.—W. A. HOCKER, J.